The **PHILADELPHIA HOUSING AUTHORITY**, et al.,

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION**, et al.

**CIV. A. No. 41773**

(and 40 other cases)*

**(THE PLUMBING FIXTURE CASES)**

United States District Court,
E. D. Pennsylvania.

Sept. 24, 1970.

* See appendix.

Morton I. Hamburg and Moore, Berson, Hamburg & Bernstein, New York City, Duke W. Thomas and Vorys, Sater, Seymour & Pease, Columbus, Ohio, C. Carleton Frederici and Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, Thomas Elke and Farella, Braun & Martel, San Francisco, Cal., Peter A. Loutos and Ansani & Loutos, Lawrence Walner, Chicago, Ill., Jack D. Most, and Most & Bertram, Los Angeles, Cal., for nonsettling plaintiffs.

James O. Sullivan and Sullivan, Marinos, Augustine & Delafield, San Diego, Cal., for settling plaintiffs.

William E. Willis and Sullivan & Cromwell, New York City, for defendants.

## OPINION AND ORDER

HARVEY, District Judge:

Presently before the Court in this multidistrict litigation is a motion filed by certain plaintiffs seeking to set aside an interlocutory order recently entered herein relating to a proposed settlement of certain claims. All of these civil actions seek the recovery of treble damages from various defendants for alleged antitrust violations in the manufacture and sale of certain plumbing fixtures.[1]

There are at the present time over 300 of these actions pending before this Court, either commenced in this District or transferred here by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pre-trial proceedings under 28 U.S.C. § 1407. Substantially all of these cases have been transferred here by the Panel from other Districts throughout the United States.[2]

No extended discussion of the general background of this litigation is required for the purposes of the present matter. Reference is made to the opinions cited in footnotes 1 and 2 for general information concerning the history of the litigation to date. These cases were originally assigned to Chief Judge John W. Lord, Jr., who has heretofore been conducting pre-trial proceedings in these cases including the adoption of a comprehensive discovery schedule. The undersigned judge of the District of Maryland was designated and assigned for service in the Eastern District of Pennsylvania commencing June 22, 1970, and by Order of the Panel dated June 26, 1970, these cases were reassigned to the undersigned judge for further proceedings under 28 U.S.C. § 1407.

Included among the plaintiffs and intervening plaintiffs in these actions are builder-owners, states, cities and other public bodies, wholesalers, retailers, and plumbing and general contractors.[3] Many of the pending suits have been filed as class actions, in which the plaintiffs claim representation of a national

---

1. Previous opinions of this Court dealing with various aspects of this litigation are reported at 269 F.Supp. 540 (E.D. Pa.1967) ; 291 F.Supp. 247 (E.D.Pa. 1968) ; 291 F.Supp. 252 (E.D.Pa.1968) ; 294 F.Supp. 1148 (E.D.Pa.1969) ; 309 F.Supp. 1053 (E.D.Pa.1969) ; 309 F. Supp. 1057 (E.D.Pa.1969) ; 50 F.R.D. 13 (E.D.Pa., April 6, 1970). See also the opinions in United States v. American Radiator & Standard Sanitary Corp., 272 F.Supp. 691 (W.D.Pa.1967), reversed 388 F.2d 201 (3rd Cir. 1967), cert. den. Decker v. United States, 390 U.S. 922, 88 S.Ct. 857, 19 L.Ed.2d 983 (1968).

2. Previous opinions of the Panel dealing with this litigation are reported at 295 F.Supp. 33 (JPML 1968) ; 298 F.Supp. 483 (JPML 1968) ; 298 F.Supp. 484 (JPML 1968) ; 302 F.Supp. 795 (JPML 1969) ; 308 F.Supp. 242 (JPML 1970) ; 311 F.Supp. 349 (JPML 1970).

3. Pursuant to an opinion filed on April 6, 1970, Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 50 F.R.D. 13 (E.D.Pa.1970), Judge Lord dismissed various actions brought by the owners of single and multiple-family dwellings and of commercial buildings. An appeal has been taken by the plaintiffs in these cases.

or territorial class. Two separate conspiracies have been generally alleged, one allegedly occurring between 1962 and 1966 and involving the so-called "full-line" defendants (8 in all), and the other allegedly occurring between 1960 and 1962 and involving (in addition to some of the same full-line defendants) the so-called "short-line" defendants (7 in number).[4]

On April 10, 1970, a settlement agreement was reached between counsel for various wholesaler plaintiffs and counsel for seven of the eight major manufacturers and the trade association, such agreement being subject to various conditions including submission to and approval by this Court. Under such agreement, these defendants undertook to contribute to a settlement fund of one million dollars to be distributed to claimants within a proposed national class of wholesalers in accordance with procedures prescribed in the agreement. Thereafter, a proposed Settlement Order No. 1 was submitted to Chief Judge Lord together with an affidavit dated June 11, 1970, of Edward Brodsky, Esq., of the firm of Goldstein, Gurfein, Shames and Hyde, who represented certain wholesaler plaintiffs. Judge Lord signed Settlement Order No. 1 on June 15, 1970, without a hearing. Such Order provided for the establishment of a temporary national class of wholesalers having claims against the settling defendants. Provision was made for the publication and sending of notices to prospective members of the temporary settlement class who were given the right to either accept the proposed settlement or to exclude themselves therefrom and proceed with the prosecution of any claims they might have against the defendant manufacturers. The Order scheduled a hearing for December 22, 1970, to determine, *inter alia,* whether the temporary settlement class should be determined and ordered to be a final and permanent class under Rule 23, F.R.Civ.P., and whether final judgment should be entered against those plaintiffs who had not excluded themselves as permitted in the proposed settlement agreement.

On June 11, 1970, a similar settlement agreement was reached between counsel for certain plumbing and general contractors and counsel for the same defendants who had entered into the wholesalers' settlement. The fund to be paid by the settling defendants in this instance was $2,000,000, and the proposed settlement was subject to similar conditions as provided in the wholesalers' agreement.[5] The defendants and the settling plaintiffs were given the right under certain conditions and after considering requested exclusions by prospective class members to withdraw from the settlement program. The same procedure for securing court approval of this conditional settlement was then followed by the interested parties. An affidavit of James O. Sullivan, Esq., of the firm of Sullivan, Marinos, Augustine and Delafield, San Diego, Cal., dated July 9, 1970 (on behalf of the settling plaintiffs), a supporting letter dated July 15, 1970, from William E. Willis, Esq. (on behalf of the defendants), and a proposed Settlement Order No. 2 were all submitted to the undersigned judge. On July 16, 1970,

4. The eight full-line defendants, or major manufacturers, are American Standard Sanitary Corporation (now American Standard, Inc.), Kohler Co., Crane Co., Wallace-Murray Corporation, Universal Rundle Corporation, Rheem Manufacturing Company, Borg-Warner Corporation, and Briggs Manufacturing Company. The short-line defendants, or smaller manufacturers, are Gerber Plumbing Fixtures Corp., Ogden Corporation, Mansfield Sanitary, Inc., Peerless Pottery, Inc., Kilgore Ceramics Corporation, Lawndale Industries, Inc., and Georgia Sanitary Pottery, Inc. Also named as a defendant in these cases is Plumbing Fixture Manufacturers Association.

5. As in the proposed wholesalers' settlement, only seven of the full-line defendants participated in the proposed plumbing and general contractors' settlement. Claims against Briggs Manufacturing Company and against the short-line defendants are not covered by either of the two settlements presented to the Court.

Settlement Order No. 2 was signed without a prior hearing having been held.[6]

Unlike the wholesalers' proposed settlement, disapproval of the amount of the proposed contractors' settlement had been expressed by some of the parties to this litigation, in particular by several attorneys representing certain plumbing contractors. Foremost among such counsel was Morton I. Hamburg, Esq., of the firm of Moore, Berson, Hamburg & Bernstein, New York City, who represented plumbing contractors in two cases. In signing and entering Settlement Order No. 2, this Court said the following in a letter dated July 16, 1970, to Mr. Willis advising him that the Order had been signed (copies of such letter being sent to other interested counsel including Mr. Hamburg):

"I have reviewed the proposed Order and Mr. Sullivan's affidavit and after comparing same with Settlement Order No. 1, which was approved by Chief Judge Lord on June 15, 1970, I have today signed and forwarded to the Clerk for filing the Order in question. I am sending to the Clerk in Philadelphia two executed copies for filing in Nos. 41,773 and 69–1256. If it is necessary that additional copies be filed in the other contractors' cases, I would presume that your office can arrange with the Clerk to have the necessary copies filed in the other cases. I have retained one complete set of these papers for my files.

"Before signing the Order, due consideration was given by me to Mr. Hamburg's letter to you of June 25, 1970. I have concluded that no hearing is necessary for the protection of Mr. Hamburg's clients or other interested parties who do not approve of the proposed settlement, and it is for this reason that I have signed and

filed the Order today. Presumably, the dates included in the Order need not now be changed, and as you have pointed out, the final hearings on both Settlement Order No. 1 and Settlement Order No. 2 are now scheduled for the same day, December 22, 1970. It is expected that the place of the hearing will be changed to Baltimore, Md., but I will take this question up at the hearing scheduled for July 30, 1970."

On July 15, 1970, Mr. Hamburg wrote a letter to the Court specifically objecting to the proposed Settlement Order No. 2 and requesting that a hearing be held before the Order was signed. This letter was not received by the Court until July 17, and on that same day the Court replied to Mr. Hamburg as follows:

"On July 16, 1970, I signed and filed Settlement Order No. 2. A copy of my letter of July 16 advising Mr. Willis and other counsel of this action was sent to you.

"At the time that I signed such Order, I did not have before me your letter of July 15, but I had considered similar arguments in opposition to the proposed settlement contained in your letter to Mr. Willis of June 25.

"After a careful reading of your letter of July 15 and of the affidavit you filed on July 6 in opposition to a motion in Civil No. 69–2693, I am of the opinion that Settlement Order No. 2 was properly signed and filed yesterday without the necessity of a prior hearing. Before this proposed settlement is finally approved, you will be given ample opportunity to be heard in connection with your contention that Mr. Sullivan and the attorneys who have joined with him are totally unrepresentative of the class of plumbing contractors. If you wish to spe-

---

6. In addition to the two settlements which have been now presented to the Court for conditional approval, there is another settlement with builder-owner plaintiffs which has apparently been negotiated. The Court has been advised that under this proposed settlement $21,500,000 will be paid to members of a national class of builder-owners and that this settlement will be presented to the Court at a later date for conditional approval under an order similar to Settlement Orders Nos. 1 and 2.

cifically attack the affidavit of Mr. Sullivan filed in support of Settlement Order No. 2, you should file a pleading to this effect so that Mr. Sullivan and other interested parties may formally reply. A hearing can then be scheduled well in advance of the December 22 date. Meanwhile, all of the provisions of Settlement Order No. 2 will remain in full force and effect and should be carried out by all parties."

Thereafter, Mr. Hamburg requested a conference with the Court. A conference was held in Baltimore, Md., on the afternoon of July 21, 1970, before steps could be taken to implement the Order. In attendance were Mr. Hamburg, Mr. Sullivan, William R. Norfolk, Esq. (an associate of Mr. Willis, representing the defendants), and two other attorneys who represented plumbing contractor plaintiffs and who were dissatisfied with the proposed settlement. At such conference, Mr. Hamburg requested that Settlement Order No. 2 be either stayed or vacated and that a hearing be held in this connection. Such request was opposed by Mr. Sullivan on behalf of the settling plaintiffs and by Mr. Norfolk on behalf of the defendants. At the conclusion of the conference, this Court refused to stay or set aside the Order but advised Mr. Hamburg and the other non-settling plaintiffs' counsel present that if they wished a hearing in open court on their request to set aside the Order, they should file a formal pleading specifically attacking statements contained in the affidavit of Mr. Sullivan which had formed the basis for the entry of the Order.

On June 30, 1970, this Court had sent a Memorandum to all counsel in all the cases then pending in this litigation, scheduling a hearing for July 30, 1970. Such hearing was for the purpose of the presentation of reports by the plaintiffs' and defendants' committees concerning the current status of the proceedings, and all counsel were invited to make recommendations to the Court concerning timetables for subsequent steps to be taken in the litigation including suggestions as to the order of priority that the Court should establish in dealing with the various matters currently pending. Among the many attorneys who were heard at such hearing was Mr. Hamburg, who stated that he intended shortly thereafter to file a motion to vacate Settlement Order No. 2 and who again requested that until a hearing could be held in connection with such motion, the Order should be stayed. At the conclusion of such hearing on July 30, 1970, this Court indicated that it would give first priority in this litigation to Mr. Hamburg's proposed motion, and a briefing schedule and hearing date was set.[7] With reference to the request for a stay of the Order, counsel for the defendants were advised that if the motion to vacate were granted, the expense of printing and publishing notices necessary for implementation of the Order would be charged against the defendants, and defendants were asked if they would consent to a stay under such circumstances. Subject to such understanding, counsel elected to go ahead with implementation of the Order, and the Court thereupon declined to grant the requested stay.

On August 6, 1970, Mr. Hamburg filed in Civil Actions Nos. 69–2692 and 69–2694 a motion to vacate Settlement Order No. 2, or in the alternative to amend such Order.[8] Counsel for plaintiffs in several other plumbing contractor actions joined in such motion. The motion was opposed by Mr. Sullivan and other plaintiffs' counsel who supported the proposed settlement and also by the defendants who had entered into the settlement agreement of June 11, 1970.[9]

7. A formal Order was entered August 3, 1970 fixing such dates.

8. The motion sought, in the alternative, various amendments to the notice to prospective class members, including provisions that would indicate the opposition of the objecting plaintiffs and the reasons for their objections to the proposed settlement.

9. Those plaintiffs who support Settlement Order No. 2 are referred to hereinafter as the "settling plaintiffs"; those who

As indicated in § 1.61, Manual for Complex and Multidistrict Litigation, as amended May 18, 1970, 49 F.R.D. 217, 218, class action procedures are subject to intentional or inadvertent abuse unless means are devised to anticipate such possible abuse. As stated in the Manual, § 1.61, C.C.H. at page 48:

"Among the potential abuses of the class action processes are the following: (1) solicitation of direct legal representation of potential and actual class members who are not formal parties to the class action; (2) solicitation of funds and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action; (3) solicitation by formal parties of requests by class members to opt out in class actions under subparagraph (b) (3) of Rule 23; and (4) unauthorized direct or indirect communications from counsel or a party, which may misrepresent the status, purposes and effects of the action and of Court orders therein, may confuse actual and potential class members, and create impressions which may reflect adversely on the Court or the administration of justice."

To prevent such possible abuse with respect to the temporary classes established by Settlement Orders Nos. 1 and 2, this Court on August 10, 1970, entered Settlement Order No. 3, which forbids communications concerning the litigation by parties and their counsel with any potential or actual member of the temporary settlement classes established in the Orders, without prior approval by the Court. Counsel were advised on August 10, 1970, that if Settlement Order No. 2 were vacated, then Settlement Order No. 3 would likewise be set aside insofar as plumbing and general contractors' claims were concerned.

After this Court's Order of August 3, 1970, setting this matter down for hearing, but before the hearing could be held, some of the non-settling plaintiffs applied on August 16, 1970, to the United States Court of Appeals for the Third Circuit for a writ of mandamus that would order this Court to stay or vacate Settlement Order No. 2. Without requiring an answer and without a hearing, the Third Circuit Court of Appeals denied such application by Order dated September 9, 1970.

Following the filing of extensive briefs and affidavits by various interested parties, a hearing was held in open court on September 11, 1970, in connection with the non-settling plaintiffs' motion to vacate.

In support of their motion, the non-settling plaintiffs claim that Settlement Order No. 2 should be vacated for the following reasons:

1. Because without a hearing the Order establishes a national class action and national class representatives, appoints counsel and approves a settlement for plumbing and general contractors in violation of Rule 23, F.R.Civ.P.;

2. Because the legal notice to members of the class approved by the Order is misleading and incomplete;

3. Because the Order and notice are prejudicial to prospective members of the class who may not wish to accept the settlement but who may wish to continue with national or territorial class actions;

4. Because counsel for the settling plaintiffs entered into collusive negotiations with the defendants and had conflicts of interest which would prevent them from acting on behalf of all plumbing and general contractor plaintiffs;

5. Because counsel appointed in the Order to represent the class was not qualified to represent nor a proper representative of the temporary class established by the Order; and

6. Because of various other deficiencies in the Order and the procedure followed.

oppose the Order are referred to as the "non-settling plaintiffs." Settlement

Order No. 2 is sometimes referred to hereinafter as "the Order."

For the reasons hereinafter stated, this Court concludes that there is no merit to any of the points pressed by the nonsettling plaintiffs and that the motion to vacate Settlement Order No. 2, or in the alternative to amend it, should accordingly be denied.[10]

Before dealing specifically with the contentions of the non-settling plaintiffs, an analysis of Settlement Order No. 2 and of the affidavit submitted in support of its entry will be undertaken. Of the more than 300 cases currently pending, only some 42 involve claims brought by general or plumbing contractors. The Order was submitted on behalf of and approved by plaintiffs in 30 of these 42 suits, and since the date of its entry the plaintiffs in one more action have approved the settlement in question. These 31 actions have been brought by some 78 plumbing and general contractors from widely scattered areas across the United States, and these contractors are represented by some 15 different law firms likewise with a wide geographical distribution. The non-settling plaintiffs claim support from plaintiffs in some 11 actions brought by 8 different law firms representing some 30 plumbing contractors. However, of these 11 actions two were not transferred to this District until September 3, 1970, and the attorneys representing the plaintiffs in two others have not appeared or filed papers in this Court in support of the pending motion.[11]

The Order refers to the agreement of June 11, 1970, as "conditionally settling and compromising" the actions involved and indicates that the parties to such agreement have requested the Court to approve such agreement and "establish a temporary class for settlement purposes only" to effectuate the agreement. Under paragraph 4 of the Order, a temporary class of plaintiffs is established "for purposes of settlement only and without prejudice to a *de novo* consideration and determination in a litigation context in the event the settlement shall not be completed for any reason * * *." The class in question is to include plumbing and mechanical contractors and general contractors, and the parties in *Nalco Plumbing & Heating Co. v. American Radiator & Standard Sanitary Corp.*, Civil No. 69–1256, are "temporarily" selected to represent the Temporary Settlement Class and are referred to throughout the Order as "Class Representatives."[12] A form of notice is approved by the Order which under paragraph 8 is to be sent to respective members of the Temporary Settlement Class and is to be published in various trade journals. Paragraph 16 of the Order provides in part as follows:

"16. A hearing shall be held before this Court on December 22, 1970 at 10:00 A.M., E.S.T., in Room 11, United States Courthouse, Philadelphia, Pa., for purposes of determining whether the applications for attorneys fees and other disbursements provided for in paragraph 14 of this Order shall be approved, *whether the Temporary Settlement Class should be determined, and ordered, to be a final and permanent class for purposes of the Plumbing Fixture Antitrust Actions pursuant to Rule 23 of the Federal Rules of Civil Procedure*, and whether final judgments of dismissal with prejudice shall be entered against all Settling Plaintiffs and members of the Temporary

10. This Court will assume for the purposes of this proceeding that the non-settling plaintiffs have standing to object to Settlement Order No. 2. The issue of standing is not the same at this stage of the proceedings as it would be at a final hearing on a proposed settlement, such as the one held by Judge Wyatt in West Virginia v. Chas. Pfizer & Co., Inc., *infra*. In any event, this Court will permit a non-settling plaintiff to participate in the final hearing scheduled for December 22, 1970, as *amicus curiae* if not as an actual party.

11. Only seven attorneys representing plaintiffs in nine of these actions either have filed papers in support of the motion or have appeared at the hearing. This Opinion and Order is being filed in those nine cases, as well as in the 31 actions that were brought by settling plaintiffs.

12. Mr. Sullivan and his firm are counsel for the plaintiffs in the *Nalco* case.

Settlement Class who have not timely excluded themselves of all claims against Settling Defendants referred to in the third paragraph of the form of the "Sworn Statement of Claim" attached to Exhibit B hereto. * * * (Emphasis added.)

Attached to Settlement Order No. 2 as Exhibit A is the settlement agreement dated June 11, 1970, signed by Mr. Sullivan on behalf of the settling plaintiffs and by separate counsel for each of the 7 corporate defendants and for the trade association, who are the settling defendants. Attached as Exhibit B is the form of a notice which is ten pages in length and which includes an attachment in the form of a sworn statement of claim and a schedule. In referring to the pending litigation and the proposed settlement, the notice includes the following statement:

*"This notice is not to be understood as an expression of any opinion by this Court as to the merits of any of the claims or defenses asserted by either side in this litigation or as to any amount that any claimant would receive on settlement,* but is sent for the sole purpose of informing you of the pendency of this litigation and the settlement described herein so that you may make appropriate decisions as to what steps you may wish to take in relation thereto." (Emphasis in original.)

The notice further contains a description of the litigation, the defendants, and the proposed class. The amount being furnished by each of the settling defendants aggregating $2,000,000 is set forth, and it is specifically noted that attorneys' fees and other expenses will be deducted from the settlement fund. It is indicated that the settlement fund shall be divided among the persons entitled thereto in proportion to the number of units assignable to each such person and that units shall be assigned on the basis of claims arising out of purchases of described plumbing fixtures made during the period October 1, 1962, to September 30, 1966. There is further a description

of the items for which credit is to be allowed, and the relative values to be assigned the various units is specified. A different and higher unit value is provided for plumbers, plumbing and mechanical contractors from the one assigned general contractors, the ratio being 10 to 1. Recipients of the notice are advised that if they are a member of the class defined, they must elect on or before October 12, 1970, to be excluded from the class or they will be deemed to be a party to the action and bound by any judgments rendered in connection with the settlement. If there is an election not to be excluded, there must be filed not later than October 26, 1970, a sworn statement of claim containing an acceptable covenant not to sue in the form attached to the notice. Finally, the notice states that if there are any questions concerning matters dealt with in the notice, the names and addresses of counsel for the class representatives will be furnished by the Clerk of the Court on request.

In support of the Order, James O. Sullivan, Esq., filed an affidavit setting forth the reasons he believed the settlement to be fair, reasonable and adequate and deserving of the Court's approval. It was stated in Mr. Sullivan's affidavit that the $2,000,000 settlement was reached after lengthy negotiations between him and Mr. Willis, that the plaintiffs in Civil No. 69–1256 "have and will continue to fairly and adequately protect the interests of the proposed settlement class," and that the plaintiffs approving the settlement are general or plumbing contractors from a broad geographical area and constitute a substantial number of the plaintiffs involved in the litigation. Mr. Sullivan further stated under oath that his firm was well equipped to represent the proposed settlement class, and he set forth in some detail his and his firm's experience in antitrust matters.

The non-settling plaintiffs here contend that the same test should now be applied by the Court in considering the proposed settlement as this Court would

employ in considering final approval of such settlement. Clearly, different principles govern at this stage of the proceedings.

■ In effect, the Order does no more than give conditional approval to the proposed settlement so that it may be submitted to members of the prospective class for their acceptance or rejection. Whether the settlement should be finally approved as fair and reasonable, whether the temporary national class should be made a permanent one, and whether all non-excluded claims should be settled and dismissed with prejudice must await determination at the final hearing. At the present time, this Court need merely concern itself with intermediate questions, including (1) whether the proposed settlement was fairly reached between the defendants and a representative number of plaintiffs in this litigation; (2) whether the proposed settlement is sufficiently fair and reasonable for submission to members of the prospective class for acceptance or rejection; and (3) whether proper procedures were adopted for giving notice to members of the proposed class. Both the affidavit of Mr. Sullivan and the expanded record now before the Court establish that this proposed settlement of plumbing and general contractor claims satisfies these requirements and that Settlement Order No. 2 was properly entered by this Court. Indeed, not a single essential fact contained in Mr. Sullivan's affidavit of July 9, 1970, has been disproved by the non-settling plaintiffs.

### The Absence of a Hearing

■ It is urged by the non-settling plaintiffs that the Order should now be vacated because a hearing was not held before it was signed by this Court. But, following the filing of extensive briefs and affidavits in support of and in opposition to the proposed settlement, a lengthy hearing has now been held in open court, and all of the non-settling plaintiffs' objections have been fully aired. Rather than being prejudicial to those who opposed the Order, the delay has enabled the objectors to claim the support of other plaintiffs in cases transferred to this District since July 16, 1970.

No hearing was scheduled by the Court until the nonsettling plaintiffs had filed formal allegations specifying the grounds for their objections. Pending a hearing, the Court declined to stay the Order with the understanding that if it were later set aside, there would be no recoupment of expenses incurred in connection with its implementation. Nothing in Rule 23 specifically requires a hearing for an interlocutory order like Settlement Order No. 2, but assuming such a requirement, a full hearing has now been held.

### The Fixing of a Temporary National Class of Plumbing and General Contractors

Under the settlement agreement, those members of the temporary class who are not satisfied with the amount of the settlement or who for any other reason do not approve of the terms of the proposed settlement, including the establishment of a national class composed of plumbing and general contractors, are entitled to exclude themselves from participation. These plaintiffs are then free to litigate their claims against *all* the defendants either individually or as a part of any class that may be later approved by the Court. At the present time, the rights of the non-settling plaintiffs to maintain either a national or a territorial class action have not been foreclosed by the Order and will not be determined until at or after the final hearing on the proposed settlement. No such final hearing will even be held if the settling plaintiffs or the defendants exercise their rights to withdraw from the settlement under the terms of the agreement.

Provided that the parties do not withdraw and the proposed settlement is presented to this Court at a final hearing, extensive additional data received by way of responses to the notices published

or sent to prospective members of the proposed class will be available to the Court to aid it in finally determining whether the settlement is fair and adequate and whether the proposed national class is a proper one. Indeed, the purpose of the Order is to try the settlement out on the proposed class. At this stage of the proceedings, no one can say whether it will or will not work. Under Rule 23(d), any Order pertaining to a class action "may be altered or amended as may be desirable from time to time."

It is further suggested that a proposed class including both plumbing contractors and general contractors is not a proper one. As stated above, no final class determination is made by the Order. It should be noted, however, that although under the proposed settlement plumbing contractors receive ten times as much per unit as do general contractors, no attorney representing only general contractors has objected. On the other hand, some 13 of the 31 suits instituted by the settling plaintiffs were brought by general contractors who have now expressed their approval of the proposed settlement, as have the plumbing contractors in the other 18 actions.

### The Requirements of Rule 23

■ The non-settling plaintiffs contend that the procedure established by the Order is in violation of Rule 23, F.R.Civ.P. They claim that this Court should first determine the appropriate class for plumbing and general contractors, that class representatives should then be appointed by the Court and that such representatives should then negotiate with the defendants on behalf of the approved class and thereafter present any resulting agreement to the Court for approval. However, the Court under Rule 23 is given wide discretion to make class determinations at such times and under such circumstanecs as will best fit the needs of a particular case. This flexibility is especially necessary and desirable in multidistrict litigation of the size and complexity as that presently before the Court.

There is no mandatory requirement in Rule 23 that in every case the class determination must be made first before any settlement negotiations are undertaken. The language of Rule 23(c) (1) is that the Court shall determine whether an action is to be maintained as a class action "[a]s soon as practicable." In Knuth v. Erie-Crawford Dairy Coop., Ass'n, 395 F.2d 420, 429 (3rd Cir. 1968), the trial court was directed to decide whether an action might be maintained as a class action "at the appropriate time." The procedure here is in accord with that suggested in the *Knuth* case, in which the Court indicated that Rule 23 (c) should be utilized to poll potential members of a class and secure information which would be useful to the Court in making an informed judgment on the class action issues. (395 F.2d at 428–430). See also Hayes v. Sealtest Foods, 396 F.2d 448 (3rd Cir. 1968). In the context of the present litigation, this Court finds it practicable to proceed, insofar as claims of plumbing and general contractors are concerned, in the manner provided in the Order.

Rather than being in violation of Rule 23, the proposed procedure here avoids the occasional harsh results that have caused criticism of Rule 23(b) (3) class actions. Where a proposed settlement is submitted to the Court for approval after the class has been determined, the rights of claimants who were not even parties to the action may be forever determined, even if such claimants would prefer to litigate rather than accept the settlement. Here a member of the proposed class will not be so foreclosed; he will still be free to separately litigate his claim if he chooses, even though the settlement is ultimately approved for others in the class.

Reliance by the non-settling plaintiffs on Philadelphia Electric Co. v. Anaconda American Brass Co., 42 F.R.D. 324 (E.D. Pa.1967), is misplaced. In that case, Judge Fullam, in declining to approve settlements of certain claims and dismissals of certain defendants, was concerned solely with the fact that no notice

had been sent to members of the class potentially affected by the proposed settlements. Settlement Order No. 2 provides for just such a notice to prospective members of the proposed class.

A similar procedure as used here was employed in West Virginia v. Chas. Pfizer & Co., Inc., 314 F.Supp. 710 (S.D.N.Y. June 24, 1970). The drug manufacturer defendants in that case originally offered $100,000,000 to settle claims of various groups of plaintiffs, including governmental entities, wholesalers and retailers, and consumers. An interlocutory order was entered by the Court (after a hearing) establishing certain temporary national classes of claimants from which prospective members of the class could by notice exclude themselves. Various claimants did accept the settlement, and others elected to be excluded. Thereafter, following certain modifications including reductions in the amount of the total settlement figure, the settlement was presented to the Court for final approval. In a comprehensive opinion, Judge Wyatt, over vigorous objection by certain plaintiffs, found this procedure to have been proper and approved the settlement, including allocations of the settlement fund among the various groups of plaintiffs.[13]

### The Reasonableness of the Proposed Settlement

■ Although no final determination of the reasonableness of the proposed settlement need be made at the present time, this Court must satisfy itself that such settlement is sufficiently fair and reasonable for submission to members of the prospective class for their approval or disapproval. On the record here, it is clear that the proposal before the Court meets this requirement.

The possibility of a settlement of the claims of all plaintiffs (a so-called "glo-

bal settlement") was first discussed at a meeting in New York City on October 13, 1969. Shortly thereafter, Mr. Hamburg and certain other attorneys formed themselves into a group which they called the "Plumbing Contractors Counsel Committee" for the purpose of discussing solely the plumbing contractor claims. This so-called "Committee" had not theretofore, nor has it since, been sanctioned by the Court as the proper representative of the plumbing contractors in this litigation, nor is there any indication that it had been or has been granted authority to act by a majority of the attorneys in this litigation representing plumbing contractors or by a majority of the plumbing contractor plaintiffs in these cases. Negotiations stalled in January, 1970, when this group demanded $7,000,000 to settle all plumbing contractor claims but were offered $1,250,000 by the settling defendants. At that point, the settling defendants turned to other plumbing contractor plaintiffs to continue their discussions. In particular, during the months of March, April and May, 1970, negotiations took place between Mr. Sullivan, representing certain plumbing contractor plaintiffs, and Mr. Willis for the settling defendants. All interested parties, including the nonsettling plaintiffs, were kept fully advised of these negotiations by Mr. Sullivan. An agreement was first signed by Mr. Sullivan on May 18, 1970, and after various revisions a final agreement was executed on June 11, 1970. This Court finds that bona fide, arms-length bargaining occurred between Mr. Sullivan and Mr. Willis during this period and that the $2,000,000 figure eventually agreed upon was honestly and fairly reached as a result of such bargaining.

The non-settling plaintiffs' claims that the negotiations were collusive is in no way supported by the record here. The

---

13. In that case, an over-all sum was tendered by the defendants for settling different groups of claims. The Court was then required to approve allocations of this amount among the various groups.

Here separate settlements are being presented to the Court at separate times, and there is no such allocation problem as existed in the drug litigation.

suggestion that Mr. Sullivan was selected because he was friendly with defendants' counsel is astounding in view of the fact that Mr. Willis who conducted the negotiations for defendants had never previously met Mr. Sullivan.[14] In opposing the settlement, the non-settling plaintiffs refer to an economic study which they say is being undertaken at their request by professors at Dartmouth College and M.I.T. and which they claim will show that damages to plumbing contractors resulting from the alleged antitrust violations may exceed thirty million dollars. Whatever facts may be eventually developed in support of the objectors' position, it is clear from the record here that their opening figure mentioned at the beginning of the negotiations on January 8, 1970, was $7,000,000. At the conference held in this Court's Chambers on July 21, 1970, Mr. Hamburg himself conceded that he could not say with any certainty that plumbing contractor plaintiffs had suffered any damage at all. Between outside limits of zero and seven million dollars, a settlement eventually reached at a two million dollar figure hardly suggests such inadequacy that it should not be submitted to members of the prospective class for approval or rejection.

A limiting factor which prudent counsel for plumbing contractor plaintiffs should consider is the possibility that the defendants may successfully assert a "pass-on" defense. At least three courts (including Judge Lord in an earlier opinion in this litigation) have recognized that such a defense presents an obstacle to plaintiffs in a treble damage action who are somewhere in the middle of a chain of distribution and who therefore must prove that an overcharge was passed on to them but not by them. In discussing the applicability to certain plaintiffs in this litigation of Hanover Shoe, Inc. v. United Shoe Machinery

Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L. Ed.2d 1231 (1968), Judge Lord said this (50 F.R.D. at 29):

> "Plaintiffs in the instant cases apparently concede that the Supreme Court in Hanover limited both use of a pass-on argument against one purchaser and the possibility of recovery by the next more remote purchaser to special circumstances such as the existence of a pre-existing cost-plus contract between them."

> \* \* \* \* \* \*

> "And unless the Court [in Hanover] intended to state a rule permitting a double- (treble-) recovery of the same loss, which this Court cannot believe, such a position must preclude recovery by more remote purchasers except in the same special circumstances."

In Minnesota v. United States Steel Corp., 299 F.Supp. 596, 609 (D.Minn. 1969), the Court in discussing the problem of multiple liability in treble damage cases, noted that the Hanover Shoe decision did not eliminate the passing-on defense. Furthermore, in West Virginia v. Chas. Pfizer & Co., Inc., supra, Judge Wyatt observed that it appeared at first glance "to be highly doubtful whether wholesalers or retailers suffered any damage whatever" (314 F.Supp. at 745) and that "it is very doubtful, to say the least, that Hanover would apply to the situation here; the point must be regarded as highly uncertain." (314 F.Supp. at p. 745).

In a confidential memorandum to all plumbing contractor plaintiffs' counsel, which was sent out on May 9, 1970, *before* the settlement agreement was executed, Mr. Sullivan realistically appraised the uncertainties and problems faced by these plaintiffs, as follows:

> "We have expressed our thoughts to all of you on numerous occasions regarding the advisability of a quick and fair settlement of the claims of

---

14. The fact that Mr. Sullivan was acquainted with Mr. Fred A. Freund, who represented one of the defendants, is of little consequence, since Mr. Willis was the one who conducted for the defendants substantially all the negotiations which led to the June 11, 1970 agreement.

plumbing contractors. We have been continually concerned over the difficulties of demonstrating any real damages. However, there is another practical factor which poses an even greater obstacle. Unless your clients are different than ours, it appears that most plumbing contractors are rather 'close with a buck' and are reluctant to make much of an investment for a return which cannot be measured with any certainty. Consequently, we must consider how many would take any affirmative action which would cost them time and money when that class action notice is sent out. Meaning, the initial notice might have some appeal, but when they learn that they will have to compile transaction data without knowing whether the fund will be divided by 10,000 or 20,000, the response will be minimal. This would be especially true if no settlement was reached because there would be no dollar sign on the pot. Our best guess, based upon a similar situation in another case, is that there would be a 20% response to the settlement notice *but only* a 5% (at the outside) to a proof of damage notice if the case has to be tried. The implications of this to each of us are obvious and I sense that defense counsel do not fully comprehend this practical problem which we face. However, realization will come as soon as they are free to concentrate on our group. Although I understand that Mort Hamburg and perhaps some others represent many plaintiffs who are willing to finance the risk of trial, most of us only represent a few named plaintiffs and our experience in handling over 100 major antitrust cases has convinced us that we could not subject our clients to such a risk. For all of the foregoing pragmatic reasons, not to mention 'pass-on' and other proof of damage problems, we believe that it is unrealistic to expect a huge settlement and we consider the present offer to be definitely 'in the ballpark.'

"We understand that some of you feel that there is no particular hurry and that a general economic study being prepared will somehow aid in the computation of a settlement figure. Wayne Pitluck, in a meeting with many of you in New York on February 23rd, expressed our doubt of the value of the economic study insofar as it would shed any light on settlement. Wayne did agree with those present that the offer then pending of $1,250,000 should be rejected.

"We feel very strongly that the time factor is essentially important. We feel that the risks which already exist are increasing rather than diminishing due to imminent settlement of the owner-builders and wholesalers and Judge Lord's recent decision in the consumer class action." [15]

The record here supports the soundness of Mr. Sullivan's reasoning. Indeed, more than a dozen other experienced antitrust counsel have agreed with his careful analysis and have accepted the proposed settlement on behalf of their clients.

At the final hearing for consideration of approval of the proposed settlement, this Court will undertake to examine the amount of the proposed settlement in the light of the likelihood and expense of successful litigation. As Judge Wyatt said in West Virginia v. Chas. Pfizer & Co., *supra* (314 F.Supp. at 740):

"The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. This factor is sometimes referred to as the likelihood of success. The Supreme Court directs the judge to reach 'an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated' and to

15. An earlier memorandum from Mr. Sullivan to this same group dated April 8, 1970 had solicited views concerning whether these plaintiffs should accept a settlement in the $2,000,000 or $2,250,000 range.

'form an educated estimate of the complexity, expense, and likely duration of such litigation, * * * and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise". The Supreme Court then emphasizes:

'Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.'

The quotations are from Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., v. Anderson, 390 U.S. 414, 424–425, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968)."

No final determination in this regard can be made at this time, as additional facts will be available to the Court later. Suffice it to say that this Court is presently satisfied that the proposed settlement is sufficiently fair and reasonable for submission to members of the prospective class so that they might decide whether "to take the bird in hand instead of a prospective flock in the bush." Ladd v. Brickley, 158 F.2d 212, 220 (1st Cir. 1946), cert. den. 330 U.S. 819, 67 S.Ct. 675, 91 L.Ed. 1271 (1947).

### The Adequacy of the Proposed Representation

■ The non-settling plaintiffs further contend that Mr. Sullivan and his firm are not proper representatives of the proposed class. Again, the charge is without substantiation.

Mr. Sullivan and his firm present worthy credentials as experienced antitrust lawyers. Mr. Sullivan himself was a trial attorney for the Antitrust Division of the U. S. Department of Justice from 1950 to 1954, and thereafter was Chief Litigation Counsel for Texaco, Inc. His practice has been largely in the antitrust field, and he has handled many major reported cases. Included among

Mr. Sullivan's partners are Wayne Pitluck, Esq., formerly an attorney for the Federal Trade Commission, and Lyle L. Jones, Esq., who was with the Antitrust Division of the Department of Justice for 30 years, and who for 15 years served as Chief of the San Francisco office. Affidavits of both Mr. Pitluck and Mr. Jones supporting the proposed settlement have been filed with the Court.

The fact that Mr. Sullivan did not personally attend meetings called by Mr. Hamburg's group certainly does not disqualify him as the prospective representative of the proposed national class.[16] Whatever may have occurred before March of 1970, the record shows that the hard bargaining which resulted in agreement at the $2,000,000 figure was conducted by Mr. Sullivan, that the eventual agreement was the fruit of his efforts, and that he also performed the coordinating work whereby approval was secured of the proposed settlement by some dozen or so additional attorneys representing a total of over 75 plumbing and general contractor plaintiffs from widely scattered areas throughout the United States. Mr. Sullivan represents only plumbing contractors, and no claim can be made that he should be disqualified from representing the class because of a conflict of interest.[17]

The non-settling plaintiffs further contend that the aggregate claims asserted by their group may be larger than the claims of the settling plaintiffs. The affidavits filed in support of and in opposition to this contention are inconclusive. This Court is satisfied that the claims asserted in the 31 settling cases are sufficiently substantial for this proposed settlement to be submitted to members of the prospective class for approval or rejection.

It is also suggested that in negotiating the settlement and proposing his firm as lead counsel, Mr. Sullivan was moti-

---

16. His partner Mr. Pitluck did attend one such meeting held on February 23, 1970.

17. Apparently, attorneys for some of the settling plaintiffs and also for some of the non-settling plaintiffs represent both builder-owners as well as plumbing contractors.

vated solely by a desire to secure the additional fees that would thereby result. Such a charge is not only unfounded but is particularly suspect when made by counsel who claim that they themselves should be class representatives of either national or territorial classes. All fees are subject to the later approval of this Court and will be fixed after all the circumstances of the representation in question have been fully evaluated by the Court.

On the record here, this Court is satisfied that Mr. Sullivan has heretofore represented his clients conscientiously and competently and that with his extensive experience in antitrust matters he and his firm are fully qualified to represent the proposed class.[18]

### The Adequacy of the Notice

■ The non-settling plaintiffs also claim that the notice approved by this Court does not meet the requirements of Rule 23. A careful reading of the 8-page notice attached to the Order indicates to the Court that the notice is unexceptionable. The notice in general follows the form approved by Judge Wyatt in West Virginia v. Chas. Pfizer & Co., *supra,* and adopted as a model in the Manual for Complex and Multidistrict Litigation, amended May 18, 1970, 49 F.R.D. 217, 243–248.

The deficiencies in the notice alleged by the objectors either do not exist or are so insignificant that they do not adversely affect the essential purpose of the notice, namely, to fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with these proceedings.

As alternative relief, the non-settling plaintiffs ask that the notice be amended in several particulars so as to state their objections to the proposal. But any amendment of the notice reflecting the opposition of a particular attorney to the proposed settlement and the reasons why he might prefer to continue with the litigation would in effect amount to a Court-approved solicitation of prospective class members on his behalf. This notice does not detail facts or arguments in support of the settlement, nor should it mention grounds why it should be rejected. Inasmuch as a notice of this sort must on its face be scrupulously neutral, it is clearly spelled out in the notice here (in fact emphasized) that the Court is taking no position concerning the merits of any claims or defenses asserted by either side in the litigation nor concerning any amount that a claimant would receive on settlement. Whether a claimant would want to accept or reject the proposed settlement is a decision to be made by him independently and without influence or pressure from those competing parties who either favor or oppose the settlement.

### Other Objections

In the voluminous papers filed by the non-settling plaintiffs in support of the pending motion, other objections to Settlement Order No. 2 and the settlement have been voiced. Each such objection has been considered in the light of the record here and has been found to be without merit. This Court finds that the essential allegations of Mr. Sullivan's affidavit in support of Settlement Order No. 2 are true.

In the main, the non-settling plaintiffs' objections boil down to a belief on their part that the amount offered by the settling defendants is not enough. Under the terms of the settlement agreement, provision is made for such plaintiffs to proceed individually against the defendants and to recover through litigation, if they can, sums in excess of the amounts they would receive by way of settlement. The proposal here protects

---

18. The Court's conclusions in this regard are reinforced by the performance of Mr. Sullivan in this very proceeding, including the briefs, affidavits and oral arguments which he so skillfully prepared and presented.

the rights of these plaintiffs who wish to litigate their claims and also the rights of those who are of the opinion that it would be in their best interests to accept the settlement that has been offered.

Accordingly, this Court concludes that Settlement Order No. 2 was properly entered on July 16, 1970, and should be neither set aside nor amended.

## ORDER

For the reasons stated, it is this 24th day of September, 1970, by the United States District Court for the Eastern District of Pennsylvania,

Ordered that the motion filed by certain plaintiffs herein to vacate Settlement Order No. 2, or in the alternative to amend it, be and the same is hereby denied.

## APPENDIX

NALCO PLUMBING & HEATING CO. et al., Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al., Defendants.
CIV. A. No. 69–1256 SC

MICHAEL HARMONAY CORP., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–2495 SC

LLOYD E. MITCHELL, INC., et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–1145 SC

Milton L. BRYAN et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–2996 SC

BUCCI PLUMBING AND HEATING COMPANY, Plaintiff,
v.
AMERICAN STANDARD CORPORATION et al., Defendants.
CIV. A. No. 69–1746 SC

LEON D. DEMATTEIS & SONS, INC., et al., Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al., Defendants.
CIV. A. No. 69–2496 SC

PACIFIC STATES PLUMBING & HTG., INC., et al., Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al., Defendants.
CIV. A. No. 70–111 SC

H. P. HELD & SONS, INC., Plaintiff,
v.
AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al., Defendants.
CIV. A. No. 69–2526 SC

ISLAND PARK PLUMBING & HEATING CORP., Plaintiff,
v.
AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al., Defendants.
CIV. A. No. 69–2528 SC

The BELDEVAIR CO. et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–C–1253 SC

FAR PLUMBING COMPANY, Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–2673 SC

ALTHOFF'S INC., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–1485 SC

Craig PHELPS, assignee for the benefit of creditors of Jacob G. Weber Co., assignor, Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–1339 SC

Harry ADELMAN, Successor Trustee in Bankruptcy for Sumner Sollett Company, Bankrupt, Plaintiff,
v.
AMERICAN RADIATOR & STANDARD SANITARY CORP. et al.,
CIV. A. No. 68–2345 SC

ARGO PLUMBING & HEATING CO., INC., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–1649 SC

SOUTH RIVIERA CORPORATION et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–1647 SC

GENE PLUMBING CORP., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–114 SC

SARBO INCORPORATED, Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–983 SC

ALFRED LAUFER, INC., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–2196 SC

WINTON CONSTRUCTION CORP., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–2197 SC

FRANCIS LEWIS HOMES, INC., et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–122 SC

ABODE REALTY CORP. et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–116 SC

WHITEHALL PLAZA, INC., et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–127 SC

Herman GLICKMAN and Lawrence I.
Glickman, et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–126 SC

HELLMAN CONSTRUCTION COMPANY, Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–1648 SC

MORRIS HANDLER COMPANY,
Incorporated, Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–1368 SC

NORTHWESTERN CONSTRUCTION CO.
et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–1655 SC

ABERDEEN PLUMBING AND HEATING
CO., Inc., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–1656 SC

HMH CONSTRUCTION COMPANY, Inc., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 69–2579 SC

Leonard M. SPIRA, Assignee for the Benefit of
Creditors of H. S. Kaiser Co., Plaintiff,
v.
AMERICAN STANDARD INC., et al., Defendants.
CIV. A. No. 69–1489 SC

HOME CONSTRUCTION COMPANY OF
MOBILE, INC., Plaintiff,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–1683 SC

LAKEVILLE PLUMBING CO., Inc., Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANI-
TARY CORPORATION et al., Defendants.
CIV. A. No. 69–2692

HOROWITZ BROS., INC. and Clark
Supply Corporation, Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANI-
TARY CORPORATION et al., Defendants.
CIV. A. No. 69–2694

MECHANICAL CONTRACTORS ASSOCIATION OF
CENTRAL OHIO et al., Plaintiffs,
v.
AMERICAN STANDARD, INC., et al., Defendants.
CIV. A. No. 70–1919

ANKENY–DES MOÍNES PLUMBING
INC., et al., Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANI-
TARY CORPORATION et al., Defendants.
CIV. A. No. 69–1622

Thomas D. ALFANO et al., Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANI-
TARY CORPORATION et al., Defendants.
CIV. A. No. 70–2416

FONTANA ENTERPRISES et al., Plaintiffs,
v.
AMERICAN RADIATOR & STANDARD SANI-
TARY CORPORATION et al., Defendants.
CIV. A. No. 70–2417

ACE HEATING AND PLUMBING CO.,
Inc., et al., Plaintiffs,
v.
CRANE CO. et al., Defendants.
CIV. A. No. 69–1091

CLIFTON BUILDING CORPORATION et al., Plaintiffs,
v.
CRANE CO. et al., Defendants.
CIV. A. No. 69–1090