Mario **PERCODANI** et al., Plaintiffs,

v.

**RIKER–MAXSON CORPORATION** et al., Defendants.

No. 69–Civ. 1328.

Civ. A. Nos. 1397, 1858, 2095 and 2965.

United States District Court, S. D. New York.

Oct. 7, 1970.

Kaufman, Taylor, Kimmel & Miller, New York City, for Mario Percodani, and others by Stanley L. Kaufman, New York City, of counsel.

Lipper, Keeley, Katcher, Lowey & Dannenberg, New York City, by Richard Dannenberg, New York City, of counsel, Sachnoff, Schrager, Jones & Weaver, Chicago, Ill., by Lowell E. Sachnoff, Chicago, Ill., of counsel, for Howard Wolfe, and others.

Rosenthal & Gurkin, New York City, for George Bruzios, and others by Mordecai Rosenfeld, New York City, of counsel.

Norman Annenberg, New York City, for Ellen L. Farber.

Rabin & Silverman, New York City, by I. Stephen Rabin, New York City, of counsel, Kaplan, Kilsheimer & Foley, New York City, by Dermot G. Foley, New York City, of counsel, for Henry K. Uman, and others.

Leonard I. Schreiber, New York City, for Lewis C. Lerner.

Winthrop, Stimson, Putnam & Roberts, New York City, for Sigmund Wahrsager, by Stephen A. Weiner, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for Riker-Maxson Corp., Robert Dressler, and S. M. Finkle by Robert B. Fiske, Jr., Bartlett H. McGuire, New York City, of counsel.

Sullivan & Cromwell, New York City, for Bache & Co., by Roger L. Waldman, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for Wm. L. Maxson, Jr., by Howard G. Kristol, New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for E. F. Hutton & Co.,

by Thomas F. Curnin, New York City, of counsel.

## OPINION

CROAKE, District Judge.

This court is now called upon to determine the fairness, legality and overall propriety of the proposed settlement to the actions at bar. The actions charge defendants with violations of § 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], §§ 10(b) and 14(a) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b) and 15 U.S.C. § 78n(a)] and breach of contract. The jurisdiction of this court rests on § 22(a) of the Securities Act of 1933 [15 U.S.C. § 77v(a)] and § 27 of the Securities Exchange Act of 1934 [15 U.S.C. § 78aa]. The facts of the case are as follows.

### I

As of December 31, 1968, William L. Maxson, Jr. and Lewis C. Lerner were members of the Board of Directors of the Maxson Electronics Corporation (Maxson Corp.). In addition, Maxson Jr. was President of and Lerner Chairman of the corporation's Executive Committee. On December 31, 1968, Maxson Jr. (as trustee and beneficiary of a trust) and Lerner (strictly on his own behalf) sold to Riker Corporation a total of 332,033 shares of capital stock in Maxson Corporation (22% of the outstanding capital stock in Maxson). On the day of the sale, Maxson common stock traded on the American Stock Exchange for between 27½ and 29⅜ per share. However, the price paid by Riker to Maxson Jr. and Lerner was $40 per share, or a total of $13,281,320. $7,703,-165.60 of that total was paid in cash, with the balance covered by Riker's 6% Subordinated Promissory Notes. As part of the sale, the purchase agreement between Riker Corporation and Maxson Jr. and Lerner contained the following provision—

"On or before June 30, 1969, Purchaser shall (i) offer to acquire all the remaining outstanding shares of Capital Stock, par value $3.00 per share, of Maxson, or (ii) offer to acquire all the assets of Maxson, subject to existing liabilities, or (iii) offer to effect a merger of Maxson into itself or another corporation controlled by it, *in each case with the result that the holders of such shares shall receive a consideration per share, in cash, or if not in cash, with a fair market value, equal to or greater than the value of the cash and Notes being delivered to Seller pursuant to this Agreement divided by the number of shares of the Maxson Capital Stock.* Questions of fair market value shall be determined by independent investment bankers appointed by agreement of the parties hereto. This subsection is intended to create a right on the part of such remaining outstanding shares." (Emphasis supplied.)

Subsequent to this agreement, rapid movement towards a merger between the two corporations began and, on March 11, 1969 proxy material with an accompanying letter from Maxson Jr. soliciting proxies in support of the merger was sent to all Maxson shareholders. The proxy material outlined an offer being made to all Maxson shareholders in return for their support of the merger and then, with an eye towards the contract provision quoted above, declared—

"Maxson has retained Bache & Co., Incorporated and E. F. Hutton & Company, Inc., independent investment bankers, to render their separate opinions to Maxson as to whether the Riker securities into which the Maxson Capital Stock shall be converted had a fair market value on March 10, 1969, at least equivalent to the per share consideration of $39.64 paid by Riker to the former principal stockholders of Maxson. Said investment bankers have rendered their respective

opinions to the effect that the Riker securities to be issued in the exchange had a fair market value on March 10, 1969, at least equivalent to the per share consideration paid by Riker on December 31, 1968 for the 332,033 shares of Maxson Capital Stock."

This statement was clearly and grossly misleading. As the attached opinion letter from E. F. Hutton to the Maxson Board of Directors and the E. F. Hutton Inter-Office Memo show (see appendix), at no time did E. F. Hutton purport to represent the fair market value of the shares involved as represented in the proxy statement. However, this misrepresentation was not brought to the attention of Maxson's shareholders and, on March 31, 1969, at a special meeting of Maxson shareholders, the merger was approved by the requisite two-thirds of Maxson Corporation's outstanding shares.

On April 1, 1969, pursuant to the shareholder vote, Maxson was merged into Riker, which then changed its name to Riker-Maxson Corporation. At the effective date of the merger, each share of issued and outstanding common stock of Maxson (other than treasury stock or shares then owned by Riker) was converted into .8 of a share of Riker-Maxson common stock and 1.2 shares of Riker-Maxson Series A cumulative convertible Class A special preference stock with a par value of $1, convertible into ¼ share of Riker-Maxson common stock per share or, in the alternative, convertible for twenty years into one share of Riker-Maxson common stock upon payment of $37. Since Riker-Maxson common stock commenced trading on the American Stock Exchange at $26 per share on that date and Riker-Maxson preference stock sold at approximately $7 per share on the over-the-counter market, the securities package received by the Maxson shareholders had a mar-

ket value of only $29.20 per share, not the $39.64 promised them.[1]

These events gave rise to five actions brought by various Maxson shareholders for the violations of law noted in the first paragraph of this opinion. Cited as defendants in one or more of the actions were Maxson Jr. and Lerner, Sigmund Wahrsager (a member of the Maxson Board of Directors and partner in a firm which received a $600,000 finder's fee for the transaction), Robert Dressler and S. M. Finkle (controlling officers of Riker Corporation before the merger), W. H. Beal, D. Bunim, and F. W. Lutz (members of the Maxson Board of Directors), E. F. Hutton & Co., Bache & Co., and the Riker-Maxson Corporation itself.

The demand for damages was predicated on three separate claims. First, that plaintiffs were entitled to recover the difference in value between the securities package they were actually given at the time of the merger and the approximately $40 per share they were allegedly entitled to as third party beneficiaries of the contract between Riker Corporation and Maxson Jr. and Lerner. Second, it was claimed that the proxy material hereinbefore cited was false and misleading and that plaintiffs, who had relied thereon to their own detriment, were entitled to the recovery of damages from those responsible. And lastly, it was alleged that Maxson Jr. and Lerner, by their sale of stock at a premium, had violated their fiduciary duty to the corporation and benefited from the sale of a corporate asset (i. e., the sale of control).

On August 7, 1969, the five actions were consolidated into one with the firm of Kaufman, Taylor, Kimmel & Miller designated as lead counsel for plaintiffs. On January 9, 1970, the court ordered that the consolidated action be maintained as a class action for and on behalf

[1]. $29.20 is a maximum figure. Other estimates place the amount closer to $28.00.

of those persons who were owners of the capital stock of Maxson Corporation as of April 1, 1969, exclusive of defendants and their immediate families. Subsequent to this, agreement on a settlement to the litigation was reached between lead counsel for plaintiffs and counsel for the various defendants.

The settlement, in essence, calls for the payment of $1,000,000 in cash and the issuance of 400,000 shares of Riker-Maxson preferred stock to members of the plaintiff class on a pro rata basis. Counsel fees and disbursements are to be set by the court and paid out of that fund. All other expenses, including the cost of sending out notices, issuing new stock certificates, etc. will be borne by Riker-Maxson. The settlement represents a package of $1,800,000 as opposed to the approximately $12,000,000 sought by plaintiffs.

Rule 23(e) of the Federal Rules of Civil Procedure states, "A class action shall not be dismissed or compromised without approval of the court * * *."

With all due respect to lead counsel for the plaintiffs, his legal expertise, and the sincerity with which he urges this settlement upon us, this court cannot bestow its approval upon it.

## II

In examining a proposed compromise for approval or disapproval under Rule 23(e) of the Federal Rules of Civil Procedure, the court must seek an answer to two inquiries: 1) Whether there was any fraud or collusion in arriving at the compromise and 2) whether the compromise is fair, adequate and reasonable. Neuwirth v. Allen (S.D.N.Y. 1964) 1961–1964 C.C.H. Fed. Sec. L. Rep., ¶91,324. Aff'd 338 F.2d 2 (2d Cir. 1964). In the case at bar, this court has no concern regarding the first question. Counsel involved on all sides of the settlement negotiations are highly respected members of the legal community, and their integrity goes unquestioned by this court. No hint of fraud or collusion is in any way present.

Thus, the inquiry of the court must focus on the question of whether the compromise is fair, adequate and reasonable. Or, to use an alternative formulation, whether the settlement is in the best interests of those whose claims will be extinguished by it. In seeking an answer to this inquiry, several factors must be kept in mind.

First, it must be remembered that a settlement is the result of a compromise, and in effecting a compromise each of the parties must expect to make some surrender in order to prevent unprofitable litigation. Masterson v. Pergament, 203 F.2d 315 (6th Cir. 1953). Second, all concerned must remember that there is no place in a settlement for a plaintiff's pursuing revenge against certain alleged wrongdoers. The primary interest of the court should be to see that plaintiffs receive what is rightfully owed them in return for the relinquishing of legal claims by them. Accordingly, the release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise, Glicken v. Bradford, 35 F.R.D. 144 (S.D.N.Y.1964), and this court expressly rejects any claim to the contrary.

In judging the worth of a proposed settlement, the court must also keep in mind the fact that recommendation of acceptance by experienced and competent counsel is a fact entitled to great weight. *Glicken (supra).* And lastly, it must be remembered that the role of the court is limited to the extent that its business judgment is not to be substituted for that of the parties who worked out the settlement accord unless the settlement, taken as a whole, appears so unfair on its face as to preclude judicial approval. Schleiff v. Chesapeake & Ohio Railway Co., 43 F.R.D. 175 (S.D.N.Y.1967). Such is the case with the proposed compromise now before us.

Perhaps the most basic reason why the proposed settlement is not fair lies in the

strength of plaintiff's claims against defendants. In determining whether or not to approve a proposed settlement, a court should not try disputed issues of law and fact. The compromise was agreed to for the purpose of avoiding just that. *Schleiff (supra).* Accordingly, this court will not, at the present time, discuss the merits of the causes of action against defendants other than to say that there appears to be considerable merit to them. Plainly and simply, plaintiffs appear to have a valid third party beneficiary claim which has yet to be fulfilled. Plainly and simply, the proxy statement pursuant to which the merger was consummated appears to be false. Clearly, plaintiffs have at least an arguable claim against Maxson Jr. and Lerner for their "sale of control."

In taking the merits of any proposed settlement into account, "The court must weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented." Fielding v. Allen, 99 F.Supp. 137, 141 (S.D.N.Y.1951). In these actions, greater success for the plaintiffs than that offered by the proposed compromise appears quite possible. For this reason, the case is easily distinguished from *Schleiff, Glicken,* and similar authorities approving settlements where the plaintiff's argument for recovery was not so compelling. And, given the fact that we are talking about the difference between a proposed settlement of $1,800,000 and a sought for recovery of $12,000,000, the possibility of a greater reward for plaintiffs is worth pursuing.

This court is also concerned with the scope of discovery conducted by the parties to the case at bar. Whether or not counsel for the plaintiff has engaged in discovery sufficient to uncover those facts which are both relevant and crucial to their case is an important consideration in the matter before us. We are told that lengthy depositions have been taken upon the defendant Riker-Maxson Corporation through its attorney, Sime-

on Brinberg, and upon defendant E. F. Hutton & Company through its Assistant Vice President, Paul Bagley. No doubt, further investigation and questioning of other involved persons was carried on through different channels. But this court is particularly concerned by the lack of proof offered to it concerning the ability of defendant Riker-Maxson Corporation to pay a judgment against it more sizeable than the proposed $1,800,-000 settlement.

Proponents of the settlement claim that the financial condition of Riker-Maxson is such as to render its ability to pay a more substantial judgment highly suspect. But this claim has been challenged by objectants, and it is essential that more proof concerning it be offered. For, on the one hand, if it can be shown that a larger judgment against Riker-Maxson would result only in a "phyrric victory" for plaintiffs with the defendant corporation being forced out of existence by it, then there is less cause for pursuing this case to trial. On the other hand though, if it becomes clear that Riker-Maxson can withstand a larger judgment, then this case must be viewed from a different perspective.

### III

In closing, this court wishes to reaffirm its belief that compromise, as a general rule, is to be encouraged in cases of this nature. Also, it would like to reemphasize its belief in the sincerity and competence of lead counsel for plaintiffs. If at all possible, this court would have chosen to acquiesce in said counsel's judgment concerning the merits of the proposed settlement. But the court is also mindful of its responsibility to act as guardian for those absent parties who are to be affected by this litigation as well as its responsibility to those objectants now before it.

In the actions at bar, the burden of proof lies with the proponents of the settlement. They must show that the proposed compromise is fair and reason-

able in light of the damages sought by plaintiffs and the likely result of victory as compared with the amount of the settlement offered. Norman v. McKee, 290 F.Supp. 29 (N.D.Cal.1968), aff'd 9 Cir., 1970, 431 F.2d 769. This burden has not been met.

It is the opinion of this court that the proposed settlement is not in the best interests of the plaintiff class of Maxson shareholders. Accordingly, the approval of the court is denied.

So ordered.

## APPENDIX

### E. F. HUTTON & COMPANY INC.

### INTER-OFFICE MEMORANDUM

To    Files

From    Riker Maxson Valuation

Re    Paul Bagley

Date    March 25, 1969

The Maxson Electronics proxy statement was received on March 18.

In this proxy the following sentence, from page 4, referred to EFH as follows: "Said investment bankers (E. F. Hutton & Bache) have rendered their respective opinions to the effect that the Riker securities being issued in the exchange had a fair market value on March 10, 1969 at least equivalent to the per share consideration paid by Riker on December 31, 1968 for the 332,033 shares of Maxson Capital Stock."

Several points should be noted with respect to this sentence:

1.    EFH did not approve of, nor even see this sentence (or any other part of the proxy) prior to its receipt on March 18, 1969.

2.    EFH has not given its opinion as stated. The only opinion we have given was a preliminary indication of our values of the convertible preferred at assumed prices of Riker.

3.    EFH does not intend to give an opinion as to the "fair market value" because this would entail a determination of the true price of Riker, which is traded OTC. Our agreement calls for them to give us an assumed price for Riker common.

4.    We expect to give our final opinion on March 31, 1969.

### E. F. HUTTON & COMPANY INC.

*Member New York Stock Exchange*

ONE CHASE MANHATTAN PLAZA

NEW YORK, N. Y. 10005

(212) 944–2100

March 31, 1969

Board of Directors

Maxson Electronics Corporation

Sunrise Highway

Great River, Long Island, New York 11739

Dear Sirs:

You have requested our opinion concerning the value of the securities being offered to the shareholders of Maxson Electronics Corporation ("Maxson") by the Riker Corporation ("Riker"), assuming a value of $30.00 per share of Riker common stock.

Our opinion is based on the understanding that each share of Maxson capital stock outstanding on the effective date of the merger shall be converted into eight-tenths (8⁄10) of a share of common stock and one and two-tenths (1 2⁄10) shares of Series A Preference Stock ("Preference Stock") of the surviving corporation. The rights of such Preference

Stock are assumed to be those set forth in the Maxson proxy statement of March 11, 1969.

Our opinion does not consider the tax consequences to either company or to its shareholders nor does it constitute an appraisal of the relative quality, marketability or appreciation potentialities of the separate companies or the financial condition, cash flow coverages of preferred dividends or the operating prospects of the surviving corporation.

Based on the terms set forth above and on a $30.00 per share value for the Riker common stock, as provided to us by Bear Stearns & Co., it is our opinion that the value of the securities being offered in exchange for each share of Maxson capital stock is at least $39.29, the per share value of the cash and notes paid to certain shareholders on December 31, 1968.

Very truly yours,
E. F. HUTTON & COMPANY INC.

(s)  By: Michael Stern
_____
Michael Stern
Assistant Vice President