513 F.2d 114
 1975-1 Trade Cases 60,222
 Abraham GRUNIN, Appellant,
v.
INTERNATIONAL HOUSE OF PANCAKES, a Division of International
Industries, Inc., Appellee.
SHAPIRO, POSELL & PILLING and Mitchell S. Shapiro, Appellants,
v.
INTERNATIONAL HOUSE OF PANCAKES, a Division of International
Industries, Inc., Appellee.
Mark J. KLEIN, Appellant,
v.
INTERNATIONAL HOUSE OF PANCAKES, a Division of International
Industries, Inc., Appellee.
David BERGER, P. A., Cross-Appellant,
v.
Mark J. KLEIN, Cross-Appellee.
 Nos. 74-1066, 74-1194, 74-1271 and 74-1282.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1974.
Decided March 17, 1975.
Rehearings and Rehearings En Banc Denied in Nos. 74-1066 and
74-1271 April 8,
1975.
 
 Jay S. Fichtner & D. E. Yeager, Dallas, Tex., David Berger, Philadelphia, Pa., Richard Posell, Los Angeles, Cal., for appellants.
 Harry L. Gershon, Los Angeles, Cal., Sheridan Morgan, Kansas City, Mo., for appellee.
 Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for Mark J. Klein.
 Before VOGEL, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 These consolidated appeals arise out of the district court's[1] approval of a proposed settlement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, of a private antitrust national class action brought by International House of Pancakes (IHOP) franchisees against their franchisor, a division of International Industries, Inc. The approved settlement, filed on November 29, 1973, calls for revisions of the franchise and equipment lease agreements between the parties (valued in excess of $12 million to the class), the payment by IHOP of $500,000 to a subclass of former franchisees, and grants a fee award of $1.25 million to counsel for the class. In this court one appellant contends that the approval of the settlement was improper because the notice given to class and subclass members did not satisfy the requirements of Rule 23 or due process and because the agreement perpetuated a number of the antitrust violations that were the primary focus of the initial litigation. Other appellants challenge the district court's allocation of attorneys' fees. Two of them claim that the court improperly denied their fee requests. A third claims that the court made its fee awards based on insufficient data regarding co-lead counsel Berger's claim for compensation. Finally, Berger has filed a cross-appeal claiming that the court's award to class counsel Klein was excessive and should be reconsidered.
 
 
 2
 We conclude that the district court did not abuse its discretion in its notice procedure or in its approval of the settlement in this case. The record reveals that the court properly fulfilled its obligation to all parties involved despite the length and complexity of the litigation. However, recent judicial developments in the area of attorneys' fee awards in class action settlements compel us to reverse in part the fee award order and remand for further hearings in accordance with the standards set forth in this opinion.
 
 
 3
 On August 23, 1971, the Judicial Panel on Multi-District Litigation transferred to the Western District of Missouri nine pending actions that had been instituted by current or former franchisees of IHOP against the franchisor. In re International House of Pancakes Litigation, 331 F.Supp. 556 (Jud.Pan.Mult.Lit.1971). On October 26, 1971, the district court ordered that these actions be maintained as a class action pursuant to Fed.R.Civ.P. 23. In accordance with that order, two categories of plaintiffs were created a class composed of current franchisees and a subclass of former franchisees. Original notice of the class action was mailed to all prospective class members on November 19, 1971. Subsequently a similar notice was sent to those parties qualifying for subclass membership.
 
 
 4
 The class action sought injunctive relief, treble damages, and attorneys' fees from IHOP on the basis that the franchise agreements and equipment leases executed between franchisor and franchisee violated the Sherman Act, 15 U.S.C. §§ 1 & 2 (1970), and the Clayton Act, 15 U.S.C. § 14 (1970). Specifically the franchisees alleged that IHOP illegally tied to the acquisition of a standard 15- or 20-year restaurant franchise the requirement that the franchisee lease or purchase a wide variety of essential products and services from IHOP or an IHOP-approved supplier. Among these "tied" items were restaurant furniture and equipment,[2] dining room supplies, menus, food items, insurance, advertising, training, management counseling and bookkeeping services.[3] The franchisees sought additional damages on the theory that these goods and services had been supplied at a price greatly in excess of fair market value[4] and on the grounds that the IHOP prohibition against selling any non-IHOP approved and priced food items deprived them of the opportunity to increase their individual profits.
 
 
 5
 Following the appointment of counsel for the class, extensive discovery was undertaken by the parties.[5] Within a short time serious settlement negotiations began. On April 24, 1973, a proposed settlement agreement was forwarded to the class and subclass members along with notice of a hearing to be held on June 1, 1973, in Kansas City. The agreement provided for a damage fund of $4.025 million (less attorneys' fees of $1.11 million) but did not amend the equipment leases in any material respect. This factor was the major subject of the objections voiced at the June hearing by a group of dissatisfied franchisees.
 
 
 6
 The district court, in a memorandum and order issued on July 12, 1973, rejected the proposed settlement. In re International House of Pancakes Litigation, 1973-2 Trade Cases P 74,616 (W.D.Mo.), aff'd, 487 F.2d 303 (8th Cir. 1973). The court acknowledged that the "precarious financial condition" of IHOP caused plaintiffs' counsel to conclude that "any substantial monetary judgment that might be recovered would be uncollectible, and would only result in the bankruptcy of the defendant." Nonetheless, the court stated that approval of the settlement would continue those franchise and lease provisions which allegedly violated antitrust laws, would bar class members from seeking further injunctive relief, and would provide insignificant monetary damage relief to the franchisees. The court concluded: "Certainly, they (the franchisees) are entitled to their day in court on this vital issue, and this Court will not foreclose them by approval of this settlement." The rejection was subsequently affirmed by this court in In re International House of Pancakes Litigation, 487 F.2d 303 (8th Cir. 1973).
 
 
 7
 On November 7, 1973, a second settlement proposal was submitted to the court for its approval. This agreement differed from the first in that it gave each class member the option to purchase his own equipment at a rate lower than the terms of the lease or to continue to lease at a reduced rate. In addition, the settlement amended the franchise agreement in that IHOP would require its franchisees to purchase from it only their pancake flour (at a lesser markup) and coffee. The agreement also expanded and made specific the services to be provided by IHOP in exchange for the management fee and granted other concessions. Finally, the settlement created a fund of $500,000 to be shared by the subclass of former franchisees and provided for the payment of up to $1.25 million in attorneys' fees at the court's direction. Notice was sent out on November 8, 1973, and a hearing on the proposal began on November 28, 1973. In contrast to the June hearing, there were no formal objections filed with the court regarding the new proposal. However, counsel for appellant Grunin participated in the hearing and voiced his objections through cross-examination.[6] At the close of the hearings the district court approved the settlement stating simply that it was "fair, reasonable, and adequate as to said class and sub-class plaintiffs." Another order was entered on February 1, 1974, awarding attorneys' fees to respective claimants. Appeals were taken from the entry of each order.
 
 I.
 
 8
 The initial claim set forth by appellant Grunin is that the notice sent to class and subclass members in November regarding the second proposed settlement was so inadequate as to timing, content, and means of transmission that it violated the requirements of Rule 23 and the dictates of due process. We disagree.
 
 
 9
 By virtue of the fact that an action maintained as a class suit under Rule 23 has res judicata effect on all members of the class, due process requires that notice of a proposed settlement be given to the class. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Greenfield v. Villager Industries, Inc., 483 F.2d 824, 833-34 (3d Cir. 1974); Air Line Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc., 455 F.2d 101, 108 (7th Cir. 1972). See also 3B J. Moore, Federal Practice P 23.80(1) at 23-1502; Dole, The Settlement of Class Actions for Damages, 71 Colum.L.Rev. 971, 976-78 (1971); Manual for Complex Litigation §§ 1.45 & 1.46 (1973).
 
 
 10
 The notice given must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In addition, the notice must "reasonably to convey the required information * * * and it must afford a reasonable time for those interested to make their appearance." Id. (citations omitted). See also Greenfield, 483 F.2d at 834; Milstein v. Werner, 57 F.R.D. 515, 518 (S.D.N.Y.1972). However, Rule 23(e) provides that notice be given "in such manner as the court directs." Thus, the mechanics of the notice process are left to the discretion of the court subject only to the broad "reasonableness" standards imposed by due process. See 7A C. Wright and A. Miller, Federal Practice and Procedure, Civil § 1797 at 237 (1972).
 
 
 11
 In the instant case notice was sent to members of the class and subclass on November 9, nineteen days prior to the hearing. Appellant Grunin alleges that this time period was so brief that it did not give class members an opportunity to retain counsel and formulate a meaningful objection to the lengthy and extremely complicated settlement agreement. Furthermore, since only a summary of the agreement accompanied the notice, appellant argues that the actual time for preparing an objection was additionally shortened by the time it took to request and receive a copy of the proposal.[7] In his view, the time period coupled with the complexity of the agreement constituted a violation of due process.
 
 
 12
 It appears that appellant is incorrectly attempting to limit our review of the factual setting in this case to the 19-day notice period. The fact that the class members here had been engaged in an ongoing action for almost two years prior to the November settlement notice is highly relevant. The record reveals that some 75 objecting class members were represented by counsel at the June settlement hearing, for which a lengthier period of notice was given. Further evidence indicates that all counsel who appeared at the June hearing were kept informed of all subsequent developments in the negotiations, as was the IHOP Franchisee Association. In addition, the Board of Directors of that organization (which included appellant Grunin) endorsed the settlement agreement in October and spent the ensuing weeks lobbying among its membership for support. Thus, in view of this evidence of "continuing notice," we are convinced that the district court committed no abuse of discretion; nor did the class have its due process rights violated by the timing of the notice. See Air Line Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc., supra, 455 F.2d at 108. In addition, the record discloses that no request for a continuance was made at any time before or during the November hearing.
 
 
 13
 Appellant Grunin next contends that the method of notice used in this case mailing notice to the last known addresses of class and subclass members was constitutionally insufficient and therefore an abuse of discretion by the district court. Relying on Lamb v. United Security Life Co., 59 F.R.D. 25 (S.D.Iowa 1972), appellant urges that, since approximately one-third of the class members were not reached by the mailing, supplemental notice by means of publication should have been ordered by the court.
 
 
 14
 We are satisfied, however, that notice by publication was unnecessary in this case for due process purposes and probably would have been of little value in alerting members of the class and subclass that were previously uninformed. In Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174-77, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court specifically held that individualized notice by mail to the last know address was the "best notice practicable" in a class action contest. The Court also reiterated its dissatisfaction with notice by publication. Id. As stated by the Court in New York v. New York, N. H. & H. R.R., 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953), "Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best." See also Schroeder v. City of New York, 371 U.S. 208, 211-13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). Since the 90 to 100 class and subclass members who did not receive mailed notices were, according to their last addresses, scattered throughout the nation, the publication of notice in three or four newspapers as suggested in Lamb would have been fruitless. Under the circumstances the court properly made use of the "last known address" method and was not required to expend further time and money on less productive notice efforts.
 
 
 15
 Appellant's final due process contention is that the notice did not provide the fair and neutral recital of the proposed settlement's term required as an attribute of due process. See Milstein v. Werner, supra. In particular, appellant asserts that the notice was misleading in its desciption of the subclass and special subclass damage fund and in its summation of the various options affecting the equipment lease. The misleading nature of the notices was compounded, in Grunin's view, by the fact that the actual settlement agreement was not forwarded to the parties. Each of these allegations is without merit.
 
 
 16
 As a general rule, the contents of a settlement notice must " fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with (the) proceedings." Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 323 F.Supp. 364, 378 (E.D.Pa.1970), aff'd sub nom., Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30 (3d Cir. 1971). See also Air Line Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc., supra, 455 F.2d at 108; 7A C. Wright and A. Miller, Federal Practice and Procedure § 1797 at 238. In addition, the notice on its face must be "scrupulously neutral" and emphasize that the court is expressing no opinion on the merits of the case or the amount of the settlement. See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra, 323 F.Supp. at 378; Cannon v. Texas Gulf Sulphur Co., 55 F.R.D. 308, 313 n. 2 (S.D.N.Y.1972). In effectuating this neutral apprisal the notice may consist of a very general description of the proposed settlement, including a summary of the monetary or other benefits that the class would receive and an estimation of attorneys' fees and other expenses. Manual for Complex Litigation §§ 1.45 & 1.46 (and related appendices) (1973).
 
 
 17
 We are satisfied that notices in the instant case complied with these standards. They were modeled after the notices used in West Virginia v. Charles Pfizer & Co., 440 F.2d 1079 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971), which now serve as exemplars of class action settlement notices in the Manual for Complex Litigation § 1.45 (appendix) (1973). Viewed in their entirety, the notices provide the required settlement information with sufficient neutrality.
 
 
 18
 Nor do we find the notices in this case to be misleading. The fact that the notices do not fully explore the equipment lease options and the various qualifications for inclusion in the subclass fund is immaterial. Class members are not expected to rely upon the notices as a complete source of settlement information. See Mungin v. Florida East Coast R.R., 318 F.Supp. 720, 733-34 (N.D.Fla.1970), aff'd per curiam, 441 F.2d 728 (5th Cir.), cert. denied, 404 U.S. 897, 92 S.Ct. 203, 30 L.Ed.2d 175 (1971). Any ambiguities regarding the substantive aspects of the settlement could be cleared up by obtaining a copy of the agreement as provided for in the first paragraph of the notice. In effect, appellant is suggesting that a copy of the agreement must be included with the notice in order to satisfy due process standards. We have found no basis for such a requirement. See generally Manual for Complex Litigation § 1.45 (1973).
 
 
 19
 Finally, we note with regard to each of the due process claims considered above that they were raised for the first time in this court despite the fact that counsel for appellant Grunin appeared at the November settlement hearing before the district court. If counsel had brought these objections to the attention of the court at that time or had sought a continuance, the expressed need for appellate relief on these grounds might well have been eliminated.
 
 II.
 
 20
 The second major contention set forth by appellant Grunin is that the district court abused its discretion in approving a settlement that was not fair, reasonable, and adequate. Specifically it is alleged that the agreement perpetuates illegal tying requirements relating to equipment, supplies, and services that accompany and acquisition of an IHOP franchise; that the benefits of the settlement to the class are illusory; that the court did not have sufficient evidence before it to make a knowledgeable comparison of the benefits of the settlement as compared to the likely reward of continued litigation; and that the settlement fails to establish formulae from which subclass damages could be determined. We reject each of these claims.
 
 
 21
 Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. See, e. g., Greenfield,483 F.2d at 832; Norman v. McKee, 431 F.2d 769, 774 (9th Cir. 1970); Percodani v. Riker-Maxson Corp., 50 F.R.D. 473, 478 (S.D.N.Y.1970), aff'd sub nom., Farber v. Riker-Maxson Corp., 442 F.2d 457 (2d Cir. 1971). The court cannot accept a settlement that the proponents have not shown to be fair, reasonable, and adequate. See, e. g., City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974); United Founders Life Insurance Co. v. Consumers National Life Insurance Co., 447 F.2d 647, 655-56 (7th Cir. 1971); Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1971).
 
 
 22
 Our review of the settlement approved by the district court in this case is guided by the principle that:
 
 
 23
 Such a determination is committed to the sound discretion of the trial judge. Great weight is accorded his views because he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly.
 
 
 24
 Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971). Only upon a clear showing that the district court abused its discretion will this court intervene to set aside a judicially approved class action settlement. In re International House of Pancakes Franchise Litigation, 487 F.2d 303, 304 (8th Cir. 1973). See also City of Detroit, 495 F.2d at 455. With these precepts in mind we turn to appellant's charges of error.
 
 
 25
 Appellant Grunin contends that the settlement perpetuates antitrust violations by virtue of the fact that it does not relieve franchisees from the requirement that they purchase or lease all equipment and furniture from IHOP. In addition, the agreement retains the stipulation that franchisees obtain all their pancake flour mix and coffee from IHOP and that they must pay a weekly service charge to IHOP for bookkeeping, management, advertising, and other related services. In appellant's view, these provisions constitute blatant antitrust violations which render the court's approval of the settlement invalid as a matter of law.
 
 
 26
 We agree with appellant's statement that a court cannot lend its approval to any contract or agreement that violates the antitrust laws. See Kelly v. Kosuga, 358 U.S. 516, 520, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959); Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 261-67, 29 S.Ct. 280, 53 L.Ed. 486 (1909). However, we are equally mindful of the fact that "neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." City of Detroit, 495 F.2d at 456. As stated in Young v. Katz, 447 F.2d 431, 433 (3d Cir. 1971), "In examining a proposed compromise for approval or disapproval * * * the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial." See also West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1086; Florida Trailer and Equipment Co. v. Deal, 284 F.2d 567, 571 (5th Cir. 1960); Percodani v. Riker-Maxson Corp., supra, 50 F.R.D. at 477. See generally McGaugh & Lerach, Termination of Class Actions: The Judicial Role, 33 U.Pitt.L.Rev. 445, 458-65 (1972). Thus, unless the terms of the agreement are per se violations of antitrust law, we must apply a "reasonableness under the totality of the circumstances" standard to the court's approval. Based on the record before us, we cannot say as a matter of law that the settlement agreement included any such violations.
 
 
 27
 Our examination reveals that the issue of illegality was vigorously contested by the parties. While two cases relied upon heavily by appellant, Siegal v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971), and Chock Full O' Nuts Corp., Trade Reg.Rep. P 20,441 (F.T.C.1973), hold that requiring a franchisee to lease or purchase equipment or supplies in connection with the acquisition of a franchise is prohibited by the Sherman Act, both opinions acknowledged the existence of a variety of affirmative defenses that needed to be considered in each case. See also Susser v. Carvel Corp., 332 F.2d 505, 516-17 (2d Cir. 1964), cert. denied, 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284 (1965).
 
 
 28
 In addition, appellees here contend that because the lease of equipment was not made a prerequisite to acquiring a franchise, the absence of coercion makes the Chicken Delight rationale inapposite. See United States v. Paramount Pictures, Inc., 334 U.S. 131, 159, 68 S.Ct. 915, 92 L.Ed. 1260 (1948); Advance Business Systems & Supply Co. v. SCM Corp., 415 F.2d 55, 69 (6th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct, 928, 25 L.Ed.2d 101 (1970). Furthermore, they urge that neither the joining of the equipment lease with the franchise or the coffee and pancake flour with the franchise constitute tying arrangements because these goods and services are inseparable from the franchise. Thus, the "two product" test for illegality under Chicken Delight is not satisfied. Kugler v. AAMCO Transmissions, Inc., 460 F.2d 1214, 1215 (8th Cir. 1972). See also Beefy Trail Inc. v. Beefy King International, Inc., 348 F.Supp. 799, 806-07 (N.D.Fla.1972).[8]
 
 
 29
 This brief survey of the theories advanced by the parties is not intended to be an appraisal of the merits of the claims in contention. It does illustrate, however, that the alleged illegality of the settlement agreement is not a legal certainty. Thus, having determined that the settlement terms were not illegal per se, we must test appellant's remaining claims of error against the broad area of discretion left to the district court.
 
 
 30
 The charge that the benefits of the settlement to the class are illusory calls into question the overall adequacy of the settlement. In making such an assessment "(t)he most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in the settlement." West Virginia v. Chas. Pfizer & Co., 440 F.2d at 1085. See also City of Detroit, 495 F.2d at 455-59; Young v. Katz, 447 F.2d at 433-34. In addition, the court should consider such factors as the defendant's overall financial condition and ability to pay; the complexity, length and expense of further litigation; and the amount of opposition to the settlement. See City of Detroit, 495 F.2d at 463. Our evaluation of the settlement in light of these factors reveals that the agreement provided substantial benefits to the class.
 
 
 31
 In discussing the per se illegality charge made by appellant Grunin, we suggested that the franchisees' probability of complete success in their suit against IHOP was by no means certain. There is evidence to suggest that a total victory, including a voiding of the equipment leases and an award of damages, would have been financially disastrous if not fatal to IHOP. Nonetheless, the district court in rejecting the first settlement proposal indicated that some revision in the equipment lease was essential. Given the court's directive and IHOP's cash flow difficulties, the parties worked out a settlement which gave valuable concessions to the franchisees yet maintained IHOP's corporate viability. It is estimated that the equipment lease options provided in the settlement were worth at least $131,000 to each class member with the total value to the class exceeding $12.5 million. Given the additional fact that any compromise involves some give and take by both sides, we feel that the district court's approval of this settlement was justified.[9]
 
 
 32
 Next, appellant argues that the district court did not have sufficient probative evidence to enable it to weigh the benefits of the settlement against the likely rewards of continued litigation. It is claimed that the exhaustive discovery in this case was limited to the issue of liability as opposed to the issue of damages and the prospects for monetary recovery. This claim is wholly unsupported by the record. The documents in the record, the transcripts of the hearings in June and November, and the memorandum issued by the court when it rejected the June settlement are replete with evidence regarding IHOP's financial condition, the amount of money paid to IHOP by the franchisees, and the parameters of the relief sought by the class. This immense repository of evidence, coupled with the district court's long-term involvement with the case, convinces us that every relevant fact was before the court. See City of Detroit, 495 F.2d at 462-64.
 
 
 33
 In addition, we note that appellant's allegations are not accompanied by any reference to specific weaknesses in the evidence before the court. As the Second Circuit recognized in the City of Detroit decision:
 
 
 34
 To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process. On their theory no class action would ever be settled, so long as there was at least a single lawyer around who would like to replace counsel for the class and start the case anew. * * * Although the parties reaching the settlement have the obligation to support their conclusion to the satisfaction of the District Court, once they have done so, they are not under any recurring obligation to take up their burden again and again ad infinitum unless the objectors have made a clear and specific showing that vital material was ignored by the District Court.
 
 
 35
 City of Detroit, 495 F.2d at 464. Since all the relevant facts have been thoroughly considered by the court, this litigation should now be at an end.[10]
 
 III.
 
 36
 The final group of issues to be decided in this appeal relates to the district court's allocation of the $1.25 million in attorneys' fees provided for in the settlement agreement. The three appeals from the award of fees assert that the trial court erred in denying fees to attorney Fichtner, in failing to compensate attorney Shapiro for his efforts in opposing the June proposal, and in employing improper standards in making the award to attorney Berger and his firm. Berger cross-appeals against Klein claiming that the award to Klein was excessive.
 
 
 37
 The district court's award of attorneys' fees in a class action settlement will be set aside by this court only upon a showing that the action amounted to an abuse of discretion. See City of Detroit, 495 F.2d at 468-75; Merola v. Atlantic Richfield Co., 493 F.2d 292, 295 (3d Cir. 1974); Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,487 F.2d 161, 166 (3d Cir. 1973); Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., 481 F.2d 1045, 1050 (2d Cir. 1973); Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 35 (3d Cir. 1971). We hold that the district court's denial of all or part of the fee requests made by appellants Fichtner and Shapiro was consistent with the sound exercise of that discretion. However, we feel that the award to Berger and his firm was made on the basis of insufficient specific evidence regarding the time spent on this litigation and should be remanded to the district court for reevaluation in light of the standards set forth in City of Detroit v. Grinnell Corp., supra, and related cases.
 
 
 38
 Appellant Fichtner's fee request was denied because, in the district court's view, "it appears that * * * he is inconsistent in applying for a fee of $75,000 for assisting in securing a settlement he contends confers no substantial benefits on the class or subclass." Order Awarding Attorneys' Fees at 8. We can find no basis upon which to disagree with the court's conclusion. Unlike the court in the Ace Heating case, the denial of fees to Fichtner was not inconsistent with the treatment afforded any other attorney who had a similar role in the litigation. See Ace Heating & Plumbing Co. v. Crane Co., supra, 453 F.2d at 35. Further, the denial here came after Fichtner had been given an opportunity at an evidentiary hearing to detail the manner in which he felt that his services benefited the class. Cf. White v. Auerbach, 500 F.2d 822, 828-30 (2d Cir. 1974).[11] The decision to deny Fichtner's application for fees was the result of due consideration of all relevant factors and will not be disturbed.[12]
 
 
 39
 Appellant Shapiro appeals from the district court's denial of his application for fees based on his opposition to the June settlement agreement that was subsequently rejected by the district court. He contends that his opposition to that settlement conferred a benefit to the class by making the final settlement offer possible and thus he should be recompensed for his efforts under the "equitable fund" doctrine. Fowler v. Schwarzwalder, 498 F.2d 143, 144-45 (8th Cir. 1974). See also Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-92, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); City of Detroit, 495 F.2d at 468-69; Alpine Pharmacy, Inc., 481 F.2d at 1057. Shapiro asserts that the district court's fee award order reflects the fact that inadequate and improper consideration was given to his claim for compensation under this theory. We disagree.
 
 
 40
 The court in its fee award order specifically found that Shapiro's efforts up through the time of the June hearing were done on behalf of clients who retained him on a non-contingent basis for that purpose. As a result, the court chose to deny his request for additional fees. That decision was open to the court in the exercise of its discretion. Alpine Pharmacy, Inc., 481 F.2d at 1053-54; Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 341 F.Supp. 1077, 1092-96 (E.D.Pa.1972), remanded on other grounds, 487 F.2d 161 (3d Cir. 1973). The fact that the court awarded Shapiro $10,000 for his role in obtaining the final settlement is clear evidence of the court's conscientious efforts to arrive at an equitable allocation of fees through the prudent exercise of its discretion.
 
 
 41
 Finally, appellant Klein raises two issues for our consideration. The first is whether the factual record surrounding the claim for fees by attorney David Berger and David Berger, P.A., provided a sufficiently detailed basis for the district court's award of $325,000.[13] Klein further contends that, on the basis of his contributions to the class as shown by the record, the court erred in compensating him at an hourly rate that was significantly lower than that awarded to other attorneys for the class.
 
 
 42
 In order to evaluate Klein's initial claim, we must outline the legal basis on which it is made. In recent years considerable judicial attention has been focused upon the issue of attorney fee awards in class action settlements. Since in most class actions the fees have been deducted from the total class recovery under the "equitable fund" theory (in connection with Rule 23), the primary concern has been to establish standards which can be used to insure that these awards reasonably compensate the attorneys for their services yet are not excessive, arbitrary, or detrimental with respect to the class. See, e. g., City of Detroit, 495 F.2d at 469-70; Merola v. Atlantic Richfield Co., 493 F.2d at 297-98; Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d at 167.
 
 
 43
 The formulation adopted by the Third Circuit in Lindy Brothers and reiterated in Merola provides a typical example of the factors that courts have been instructed to consider in establishing fee awards:
 
 
 44
 a) the number of hours spent in various legal activities by the individual attorneys,
 
 
 45
 b) the reasonable hourly rate for the individual attorneys.
 
 
 46
 c) the contingent nature of success, and
 
 
 47
 d) the quality of the attorneys' work.
 
 
 48
 Merola v. Atlantic Richfield Co., 493 F.2d at 297. See also City of Detroit, 495 F.2d at 468-74; Wilderness Society v. Morton, 161 U.S.App.D.C. 446, 495 F.2d 1026, 1036-37 (1974); Brandenburger v. Thompson, 494 F.2d 885, 888-90 & n. 7 (9th Cir. 1974); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-20 (5th Cir. 1974). However, as the Second Circuit recognized in City of Detroit, the "only legitimate starting point" in establishing fees is "by merely multiplying attorney's hours and typical hourly rates. * * * It is only after such a calculation that other, less objective, factors can be introduced into the calculus." 495 F.2d at 471.
 
 
 49
 In order to insure that all necessary data is before the court, attorneys are generally required to submit detailed affidavits which itemize and explain their fee claims. Also, many courts have required that an evidentiary hearing be held at which each claimant is subject to cross-examination. See City of Detroit, 495 F.2d at 471-74. The district court in this case held such a hearing following the submission of affidavits. The record reveals that all of the attorneys involved, except Mr. Berger, furnished the court with detailed information concerning the total number of hours spent, how the time was used (e. g., research, negotiations), by whom (e. g., senior partners, associates), and what standard hourly rate was charged by each category of attorney for each type of work. At no time did Mr. Berger supply the court with any information relating to standard hourly rates for himself or his firm. Nor did he furnish a complete breakdown of who spent time in what endeavors. We see no reason for applying one standard to Berger and another to all other attorneys involved.
 
 
 50
 Berger argues in response that where, as here, the attorneys' fees are set aside in the settlement rather than deducted from the class recovery, factors other than the time spent should be emphasized in allocating fees. Among those factors he lists (1) the standing of counsel at the bar; (2) the risk of the litigation; (3) the responsibility undertaken; and (4) the amount that it would have been reasonable to charge a victorious plaintiff. See Trans World Airlines, Inc. v. Hughes, 312 F.Supp. 478, 480 (S.D.N.Y.1970), modified on appeal, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Given these standards, Berger feels that the award was entirely justified.
 
 
 51
 We do not dispute Mr. Berger's credentials as an experienced antitrust class action attorney. Nor do we disagree with his contention that the factors listed above must be given serious consideration by a court in making its fee awards. However, as stated in City of Detroit, the valuation of an attorney's services must begin with the consideration of hours and rates. Without such an inquiry "there is a grave danger that the bar and bench will be brought into disrepute, and there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation. Cherner v. Transitron Electronic Corp., 221 F.Supp. 55, 61 (D.Mass.1963)." 495 F.2d at 470-71.
 
 
 52
 The argument that a lesser standard should apply for purposes of the allocation of fees merely because the attorneys have had the foresight to provide for themselves in the agreement is equally unavailing. At some point the discretion of the court must be exercised in determining what portion of the $1.25 million is "fair, reasonable and adequate." In view of the precarious financial situation of the company, which was noted by the court in making its awards, we are convinced that the amount of attorneys' fees actually awarded is extremely important to the class. For example, if the court had not awarded the whole $1.25 million, the IHOP cash flow would have been improved by whatever portion was unused, thus increasing the chances that the franchisor would remain able to carry through on its contractual obligations under the settlement.
 
 
 53
 The case at bar resembles in many respects the situation faced by the Third Circuit in Merola v. Atlantic Richfield Co., supra. In that case the settlement agreement provided for the payment of "reasonable attorneys' fees," thus removing it from the "equitable fund" category of cases. Nonetheless, the court found that the four-part test from Lindy Brothers was fully applicable.
 
 
 54
 The first two factors (time spent and reasonable rate) produce what might be considered the market value of the attorneys' services. The latter two (risk and quality of work) permit the district judge the needed flexibility to tailor the award to the actual performance of counsel. The end result an amalgram of expected value and delivered performance represents a reasonable fee under normal circumstances.
 
 
 55
 493 F.2d at 298. We concur in this analysis. The Lindy standards as interpreted in City of Detroit and Merola provide the appropriate test for determining any discretionary fee award in a class action context.
 
 
 56
 In reaching this decision, we are not critical of the district court's actions in this case. At the time of the court's fee award, City of Detroit and Merola had not been decided; nor had this court addressed the issue of attorney fee awards under comparable circumstances. Accordingly, this case will be remanded to the district court for the holding of an additional hearing on the fee award made to David Berger and David Berger, P.A.
 
 
 57
 The contention by Klein regarding the impropriety of his fee award in light of the hourly rates awarded to other attorneys in the class is not supported by the record. The court had ample evidence before it concerning Klein's efforts in the litigation. The standards we have enunciated above allow for such variations in fees. The cross-appeal by Berger is similarly denied.
 
 
 58
 This case is affirmed in all respects except for the award of attorneys' fees to David Berger and David Berger, P.A. On that issue we remand for reconsideration by the district court in accordance with this opinion.
 
 
 
 [1]
 The Honorable William R. Collinson, United States District Judge for the Western District of Missouri
 
 
 [2]
 The equipment lease provided that the franchisee lease all of his restaurant equipment from IHOP in exchange for lease payments of roughly $280 per week for the first five years, $190 per week for the following ten years, and $160 per week for the last five years of the agreement
 
 
 [3]
 These management and bookkeeping services were supplied by IHOP in return for a weekly payment of between 5 and 6.2% of the franchisee's gross receipts with a $100 minimum
 
 
 [4]
 For example, the pancake mix which the agreement required the franchisees to purchase from IHOP was sold to them at a markup of 100% over raw costs
 
 
 [5]
 According to counsel for International Industries, Inc., 20,000 pages of depositions were taken in this case and approximately 100,000 documents were produced for inspection by the parties
 
 
 [6]
 Appearing as amici curiae before this court are nine IHOP franchisees who object to the settlement. They claim that their views are shared by a significant number of other franchisees. However, they claim that because of the short notice period and the failure of counsel for the IHOP franchisees' association to enter their objections at the hearing, their opposition was not considered by the court in approving the settlement. Even if we add these nine individuals to the list of objectors, the record reveals that most IHOP franchisees favored the settlement
 
 
 [7]
 The notice stated that a copy of the agreement could be obtained from the clerk of the court in Kansas City or from the offices of counsel in Kansas City, Philadelphia, Los Angeles, and San Francisco
 
 
 [8]
 The Beefy Trail holding is based upon the theory that the sale of a fully equipped restaurant from the franchisor constitutes only one product. 348 F.Supp. at 805-07. Appellees argue that many of the current IHOP franchisees have purchased established restaurants and therefore cannot satisfy the necessary two-product test for illegality
 
 
 [9]
 We note parenthetically that the task of this court might have been easier had the district court provided us with a memorandum in which it detailed the reasons for its approval of this settlement as opposed to the June proposal. After extensive examination of the record it is clear to us that the district court rejected the June agreement because it provided no relief whatsoever from the equipment lease it was an uncompromising compromise. Thus, we are convinced that the significant changes in that equipment lease made by the November settlement, especially given the financial strictures to which IHOP was subject, were an important factor in the court's approval. The court's insistence on this issue was instrumental, we feel, in bringing about the more valuable November settlement
 
 
 [10]
 Appellant's claim that the agreement is defective because it does not provide a formula for the computation of damages for individual subclass members is found by this court to be devoid of merit and will not be discussed
 
 
 [11]
 In addition, the court in White v. Auerbach was influenced by the fact that the judge who presided over the applications for attorneys' fees had not presided over the substantive proceedings. 500 F.2d at 828. That fact situation is not present here
 
 
 [12]
 It has been contended to this court that Fichtner's appeal on this issue should have been dismissed for want of jurisdiction, pursuant to F.R.A.P. 3(a), because it was untimely. However, since other parties have properly appealed the same issue, we have treated Fichtner's filing out of time as merely a failure to comply with a rule of practice. So classified, it may be waived by the court to allow the appeal. See 9 J. Moore, Federal Practice § 204.11(5) (1973)
 
 
 [13]
 The issue of Klein's standing to challenge the fee award to Berger was raised in oral argument. We do not reach this issue. It is our view that since the settlement has been challenged, the reasonableness of the attorneys' fees is within the overall supervisory review of this court