TERRY D., Romondo P., David L., Roger V., Byron C., Jeffery H., Laura C., Rebecca G., by their attorneys and next friends, Steven A. Novick and Richard L. Weldon, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

L. E. RADER, et al., Defendants,

State of Oklahoma, ex rel. Department of Institutions, Social and Rehabilitative Services, Intervenor-Defendant.

No. CIV–78–0004–T.

United States District Court, W. D. Oklahoma.

Feb. 26, 1982.

Steven A. Novick, Legal Aid of Western Oklahoma, Inc., Oklahoma City, Okl., David Lee Lambert, David C. Howard, St. Louis, Mo., Edward I. Koren, Alvin J. Bronstein, The National Prison Project of the American Civil Liberties Union Foundation, Washington, D.C., for plaintiffs.

Thomas H. Tucker, Oklahoma City, Okl., William R. Burkett, Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., Gene Stipe, Mitchell A. Lee, Stipe, Gossett, Stipe, Harper & Estes, Oklahoma City, Okl., Jan Eric Cartwright, Atty. Gen., Floyd W. Taylor, Robert A. Nance, Asst. Attys. Gen., Oklahoma City, Okl., for defendants.

## ORDER

RALPH G. THOMPSON, District Judge.

Principally at issue is whether or not a proposed Stipulated Agreement, entered into by all parties and their counsel of record prior to the entry of appearance of the Attorney General of Oklahoma, should be approved.

This is a class action in which the plaintiffs allege that the operation of the juve-

nile treatment centers of the State of Oklahoma is violative of certain of their constitutional rights. The proposed settlement was entered into by all parties, submitted to the Court and distributed to the several institutions, with notices to the class, inviting their objections or comments, all as required by rule.

 Rule 23(e), Federal Rules of Civil Procedure, provides:

"(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs."

The purpose of Rule 23(e) is to protect absent class members from unjust or unfair settlements by requiring approval of the Court in order to dismiss or compromise a class action. The standard of evaluation of a compromise is fairness and reasonableness with respect to the best interests of all affected. *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977). The Court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate. *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).

 Many of the provisions of the proposed settlement may have merit and, were it not for the antagonism to them and the effort to withdraw from the settlement by the Attorney General, speaking for the Oklahoma House of Representatives, it might have been a settlement the Court could have approved. In order for a settlement to be fair, reasonable and adequate, however, it must at least offer the strong likelihood that it will eventually end the litigation and controversy. Where a settlement is the subject of disagreement, and predictably will be the source of continuing controversy and litigation, it cannot be deemed to be reasonable, fair or adequate.

 The proposal before the Court must be considered inadequate because it cannot reasonably be expected to settle the controversy by being successfully implemented. At least one body of the legislative branch of state government opposes the settlement which was entered into by a department of the executive branch. No such plan can be expected to succeed without the cooperation of both. Under such circumstances, to approve the proposed settlement would pit one branch of state government against the other, with the federal court, unwillingly but necessarily, superimposed on both. This would generate an inevitable and impossible tangle of jurisdictional, prerogative and constitutional disputes.

By approving the proposed settlement, the Court would be adopting it as its own order, and be obliged to enforce it, notwithstanding that the order was not based on competent evidence heard and evaluated by the Court, but based only on the agreement of the parties. Such proposal might have been workable if the state government had spoken as one voice in agreeing to it. As a practical matter, had the parties to the proposed settlement consulted the legislative branch, at least to the extent of being reasonably assured that the settlement would not be opposed and resisted, the case might well have been successfully terminated. But here, where antagonism over its provisions exist between departments of state government, the potential for conflict would seem to be without end. No stable, predictable, manageable program could be possible and the state's juvenile treatment program, state-federal relationships and the public's confidence in its institutions all would suffer. To approve the proposed settlement under such circumstances would not be practical or sensible or in the best interest of the class or anyone else.

A state government which cannot even agree on who represents its institutions can hardly be expected to successfully implement the proposed changes in its juvenile treatment program.

This case has the potential of becoming an example of what is widely recognized as one of the most important disputes in the history of the American judiciary: What role should the federal judiciary play in

overseeing, correcting, setting standards for, and directly administering the social services of the states? Protection of constitutional rights is clearly and undisputably the role of the Court. The Court is, and always shall be, available and unhesitating in that role. Beyond that, the administration of social policy is properly for the state itself. A state's decisions affecting social policy, with the attendant philosophical considerations and budgetary consequences should be as free from federal judicial intervention as protection of constitutional entitlements will permit. Forfeiture of a state's decision-making power should occur only by such a dereliction of duty as to clearly require judicial intervention.

Many of the policies and procedures contained in the proposed settlement were just that—policy and procedures—and not matters of constitutional right. It is well within the prerogative of the state to adopt such policies and procedures if it chooses, but such matters are not the business of the Court. To the extent that courts assume the determination of such policy and procedures, the power and discretion of the states are reduced and their responsibilities are usurped. Again, the role of the Court is to protect constitutional rights, not to restructure state governmental programs except as necessary to protect those rights.

Whatever the perceived disagreements presently existing between the parties, it is entirely possible that a revised agreement can be reached, which has the support of both the executive and legislative branches to insure successful implementation. No other solution could be as sensible and practical and beneficial to all concerned.

Many examples exist where state officials, by their inaction, have left no recourse but for the courts to assume the responsibility for any number of social programs. There is no reason why this case must inevitably join such indistinguished company. To the contrary, this case offers a long overdue opportunity to demonstrate a successful combination of (1) judicial restraint, based on a respect for the proper roles and relationships of government, together with

(2) conscientious action by the state to insure constitutional entitlements and (3) reasonableness on the part of all parties to resolve, rather than litigate, the issues. The result should satisfy both the goals of the class and preserve the prerogatives of the state.

To provide a new opportunity for such a resolution to be realized, the following Order and schedule is announced:

1. By reason of its inadequacy, as heretofore discussed, the proposed Stipulated Agreement is not approved.

2. A trial date for this case will not be determined for a period of 60 days, during which time the parties, including the Attorney General of Oklahoma, are directed to confer, with full participation of legislative leaders, with a view to reaching an agreeable settlement.

3. In the meantime, this Court continues to be available for consideration of any requested preliminary or emergency relief, responsibly claimed to be necessary, from immediate or threatened deprivations of constitutional rights affecting the safety or welfare of any members of the class.

4. Having declined to approve the proposed Stipulated Agreement the issue and motions regarding the Attorney General's purported withdrawal from it and its alleged invalidity are moot.

5. Plaintiffs' Alternative Motion to Dismiss State of Oklahoma as a Party is denied.

6. The Entry of Appearance and participation of the Attorney General is found to be pursuant to statutory authority, 74 O.S. § 18b(b) and (c), and will be permitted.